Richard L. STEVENSON, Appellant,

v.

INTERNATIONAL TRADE COMMISSION, New Zeal Enterprises Co., Prophet International Co., Lido Trading Co., Ltd., Hardy Enterprise Corp., Appellees.

Appeal No. 79–12.

United States Court of Customs and Patent Appeals.

Dec. 20, 1979.

Rehearing Denied Feb. 28, 1980.

Keith D. Beecher, Los Angeles, Cal., attorney of record for appellant.

Russell N. Shewmaker, Gen. Counsel, Jeffrey M. Lang, Deputy Gen. Counsel, Washington, D. C., N. Tim Yaworski, attorneys of record for appellee, Intern. Trade Commission, Myron Solter, Washington, D. C., and David Simon, Washington, D. C., attorneys of record for appellees, New Zeal Enterprises Co., et al.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and WATSON, Judge.*

BALDWIN, Judge.

This is an appeal from the November 13, 1978 order of the United States International Trade Commission (Commission) which terminated investigation No. 337–TA–37, In the Matter of Certain Skateboards and Platforms Therefor, in view of its determination that no violation of section 337 of the Tariff Act of 1930, as amended by the Trade Act of 1974, 19

* The Honorable J. L. Watson, United States Customs Court, sitting by designation.

**548**

U.S.C. § 1337,[1] exists in the importation into, or sale in, the United States of certain skateboards and platforms therefor. We reverse and remand.

### Background

On November 4, 1977, appellant, Richard L. Stevenson (Stevenson) filed an amended complaint with the Commission pursuant to § 337, alleging that unfair methods of competition exist in the importation and distribution of certain skateboards alleged to infringe claims 1, 2, 7 and 8 of U. S. Patent No. 3,565,454 to Stevenson. The filing date of the Stevenson patent is June 12, 1969. Claim 1 is the broadest claim, and reads:

1. A sport maneuvering device comprising:

 a. an elongated platform for supporting a person, the platform having a forward end section and a rearward end section;

 b. wheels coupled to and beneath the platform; and

 c. an inclined foot-depressible lever coupled to the rearward end section of the platform, the lever being oriented so its plane slopes upwardly and rearwardly from the platform wherein a person positioned with one foot on the platform and the other foot resting on the lever may tilt the platform to a desired position by depressing the lever.

The subject device of the claims at issue is commonly known as a kicktail skateboard.

Foreign manufacturers and exporters named and served in the investigation were New Zeal Enterprises Co., Ltd., Lido Trading Co., Ltd., Prophet International Co., Ltd., Hardy Enterprise Corp., and Amapala Marine (name corrected to S.K.B. de Honduras [sic] by order issued March 31, 1978). Importers named and served were Sportmaster, Inc., Marco Polo Co., National Sporting Goods Corp., Dixie Trading Co., and Woodline Products Co. The only named respondents to appear at the hearing (referred to collectively as the "Taiwan manufacturers") were New Zeal Enterprises, Co., Ltd., Prophet International Ltd., Lido Trading Co., Ltd., and Hardy Enterprise Corp. It was stipulated by the active parties that all named respondents were engaged in either export to or importation

---

1. 19 U.S.C. § 1337 provides, in pertinent part:

§ 1337. *Unfair practices in import trade— Unfair methods of competition declared unlawful*

(a) Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section.

\* \* \* \* \* \*

*Determinations; review*

(c) The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section. Each determination under subsection (d) or (e) of this section shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter II of chapter 5 of Title 5. All legal and equitable defenses may be presented in all cases. Any person adversely affected by a final determination of the Commission under subsection (d) or (e) of this section may appeal such determination to the United States Court of Customs and Patent Appeals. Such court shall have jurisdiction to review such determination in the same manner and subject to the same limitations and conditions as in the case of appeals from decisions of the United States Customs Court.

*Exclusion of articles from entry*

(d) If the Commission determines, as a result of an investigation under this section, that there is violation of this section, it shall direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the

into the United States of the articles in question.[2]

An evidentiary hearing was conducted by a Commission Administrative Law Judge (ALJ). His recommendation was that the Commission determine that there is no violation of § 337 in the importation and sale in the United States of skateboards and platforms therefor meeting claims 1, 2, 7 and 8 of the Stevenson patent. This recommendation resulted from his conclusion that the subject claims are invalid as obvious under 35 U.S.C. § 103 in view of prior art.

The Commission, with Chairman Parker dissenting and Commissioner Stern not participating, ordered the investigation terminated on the basis of a determination that no violation of § 337 exists. As reflected in the joint opinion of Commissioners Moore and Bedell and the concurring opinion of Commissioner Alberger, the basis of this determination was the finding that claims 1, 2, 7 and 8 of the patent to Stevenson are invalid for purposes of § 337 as obvious in view of prior art pursuant to 35 U.S.C. § 103.[3]

### Issue

We face the dispositive issue whether the subject matter of claims 1, 2, 7 and 8 of the patent to Stevenson would have been obvious to one of ordinary skill in the art of designing skateboards at the time the invention was made.

### OPINION

#### Standard of Review

■ The Commission's brief argues that the standard of review in this case is whether the determination of the Commission is clearly contrary to the weight of the evidence before it. We do not agree.

This determination was based on the Commission's finding that the subject claims of the Stevenson patent were invalid as obvious in view of prior art under 35 U.S.C. § 103. However, "obviousness is a legal conclusion based on factual evidence, *Graham v. John Deere Co.*, [383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966)] * * * and not a factual determination." *In re Warner*, 379 F.2d 1011, 1016 n.6, 54 Cust. & Pat.App. 1628, 1634 n.6, 154 USPQ 173, 177 n.6 (1967). Therefore the proper issue before us is whether the Commission erred, as a matter of law, in holding that the claims were invalid under 35 U.S.C. § 103. In deciding this issue, the court will make "an independent determination as to the legal conclusions and inferences which should be drawn from [the findings of fact]." See *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961).

#### Prior Art

Under § 103 the scope and content of the prior art are to be determined; differences

---

Secretary shall, through the proper officers, refuse such entry.

**2.** The Commission's brief reports that the following stipulations were entered into by the active parties below:

(1) There is importation of the skateboards in question into the United States;

(2) There is an industry devoted to production of the skateboards in question in the United States;

(3) The U. S. industry is composed of appellant and his licensees;

(4) The U. S. industry is efficiently and economically operated;

(5) Importation of the skateboards in question has the effect or tendency to destroy or substantially injure the U. S. industry; and

(6) If infringement is found as to one of the accused imported skateboards (staff exhibit No. 5 (SX–5)), then all the accused imported skateboards infringe the Stevenson patent.

**3.** Commissioners Moore and Bedell, in their joint opinion, reasoned that:

The functional advantages of the kicktail skateboard relative to the rocker skateboard arise from the fact that the front portion of the former is flat whereas that of the latter is curved. The continuously curved shape of the rocker board causes a dip in the center portion of the board that deepens as the curvature of the board increases. This dip can cause balance problems for the rider attempting to perform "wheelies", as well as increasing the likelihood that the center portion of the board will scrape. against the ground. The presiding officer [ALJ] found that it would have been obvious to a person of ordinary skill at the time the kicktail invention was made to eliminate the rocker board's balance and grounding problems by simply flattening its center and forward portions. We agree.

between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. *Graham v. John Deere Co.*, supra 383 U.S. at 17, 86 S.Ct. 684.

### 1) *The Abbott Water Ski and Kelly Surfboard*

The Taiwan manufacturers argue that the Abbott water ski patent, U. S. patent No. 3,056,148, and the Kelly hydroplane surfboard patent, U. S. patent No. 3,111,-695, are relevant prior art. The patents disclose, respectively, a water ski and a surfboard with an upturned aft plane.

■ In a simple mechanical invention a broad spectrum of prior art must be explored and it is reasonable to permit inquiry into other areas where one of ordinary skill in the art would be aware that similar problems exist. *In re Heldt*, 433 F.2d 808, 58 Cust. & Pat.App. 701, 167 USPQ 676 (1970). Whether certain art is to be considered as prior art, we must consider the similarities and differences in structure and function of the inventions disclosed in the references. *In re Ellis*, 476 F.2d 1370, 177 USPQ 526 (CCPA 1973). There is similarity in structure, with the waterski, the surfboard, and the kicktail deck all having an upturned aft plane. However, the problem of maneuvering a wheeled vehicle across a hard surface would appear to differ significantly from the problem of maneuvering a surfboard or waterski through water, a fluid medium. Therefore, we agree with the majority of the Commission that one of ordinary skill in the art of designing skateboards would not have turned to these patents for guidance on a problem of maneuverability of a wheeled vehicle.

### 2) *The Woodblock and Heelplate Skateboards*

The Taiwan manufacturers also strongly argue anticipation of the subject claims by the Langton primitive woodblock skateboard and the Gottlieb heelplate skateboard. One witness, Mr. Langton, testified that he knew of a primitive woodblock skateboard prior to appellant's invention. This was a plank of wood with roller skates attached underneath, and a two-by-four shaved off at an angle attached across the rear of the plank. No physical exhibit was offered. Mr. Langton is president of a company which manufactures kicktail skateboards. Another witness, Mr. Gottlieb, testified that he produced a "heelplate" skateboard prior to Stevenson's invention. This was a flat skateboard with a shoe heel attached to the upper surface of the board aft of the rear wheels. No physical exhibit was presented. Mr. Gottlieb also manufactures kicktail skateboards and at the time of his testimony was defending a patent infringement suit brought against Sears and Roebuck Company by appellant on the same patent now under consideration. Neither witness could recall the position of the rear wheels relative to the aft end.

■ The evidence presented is insufficient to establish the existence of any anticipating devices. Proof of such devices, alleged to be complete anticipations of the subject patent, must be clear and convincing to overcome the presumption of validity.[4] Uncorroborated oral testimony of prior inventors or users with a demonstrated financial interest in the outcome of the litigation is insufficient to provide such proof. *The Barbed Wire Patent*, 143 U.S. 275, 284, 12 S.Ct. 450, 36 L.Ed. 154 (1892); *Jones Knitting Corp. v. Morgan*, 361 F.2d 451, 149 USPQ 659 (3rd Cir. 1966).

---

4. 35 U.S.C. § 282, in effect at the time appellant filed his complaint, provides in part:

A patent shall be presumed valid. Each claim of a patent (whether in independent or dependent form) shall be presumed valid independently of the validity of other claims; dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

### 3) The Rocker Skateboard

A physical exhibit, RX–13, of a rocker skateboard has been admitted into the record. A rocker board differs from a flat skateboard in that the platform of the rocker board has an arcuate, continuously curved configuration with the leading and trailing edges each higher than the center portion of the platform. A rocker board is sometimes referred to as a spoon board or a Hobie Board, after its designer, Hobie Alter. Considering the testimony of the witnesses as well as the admissions of Stevenson, who had manufactured rocker boards prior to his invention now under consideration, it is clearly established that rocker boards, exemplified by physical exhibit RX–13, are relevant prior art.

### 4) The Flat Skateboard

The flat skateboard, which has a flat platform, was acknowledged in the Stevenson patent specification as prior art.

Thus, on the record before us, the prior art includes, in addition to those patent references cited by the examiner in the examination of the Stevenson application, both flat skateboards and rocker skateboards.

The differences between the prior art represented by flat boards and rocker boards and the claims at issue are confined solely to the configuration of the platforms. The platform of the flat skateboard is flat. The platform of the rocker board is arcuate shaped, forming a continuous curve with the leading and trailing ends each higher than the central portion of the platform. The platform of the claimed board has a section that is flat, with an inclined foot-depressible lever coupled to the rearward end section, the lever being oriented so its plane slopes upwardly and rearwardly from the platform.[5]

5. While claim 1 does not specifically limit the elongated platform to a flat shape, a review of the entire specification including the figures, and particularly claim 2 which refers to "an intersection angle defined by the planes of the platform and lever," we conclude that the elongated platform recited in claim 1 is planar. Note that we do not read the limitation of claim 2 into claim 1, but instead use the recitation in

### Obviousness

In determining the presence or absence of obviousness, and in considering the facts of record before it, a court must remain aware that a patent shall be presumed valid and that the burden of persuasion is and always remains upon the party asserting invalidity, as required by 35 U.S.C. § 282. See n.4 supra. *Solder Removal Co. v. International Trade Commission*, 582 F.2d 628, 65 Cust. & Pat.App. 120, 199 USPQ 129 (1978), and cases cited therein. The arguments before us and the Commission below focus on the prior art comprising the rocker board and the flat board.

The rocker board has been introduced into the record as a physical exhibit rather than in the form of a written description in a patent or otherwise. The physical exhibit of the rocker provides us with an example of an up-swept trailing end, or tail, which is inclined at an angle to a horizontal surface. We must consider the evidence of record to determine what, if any, teachings were provided to one of ordinary skill in the art at the time of Stevenson's invention that would have made it obvious to substitute the flat platform of the flat skateboard for the arcuate platform of the rocker, or conversely to combine the up-swept, inclined tail of the rocker with the flat skateboard.

### 1) Testimony of Witnesses

The physical exhibit, RX–13, of a rocker skateboard was introduced by Mr. Gottlieb, a manufacturer of skateboards, who testified that the rocker board existed prior to Stevenson's invention of the kicktail skateboard. Mr. Gottlieb provided no testimony with regard to the actual teachings inherent in the rocker board at the time of appellant's invention.

claim 2, which is a part of the entire specification as filed, as evidence to determine the definition of elongated platform in claim 1.

Claim 2 reads:

2. The structure according to claim 1, wherein an intersection angle defined by the planes of the platform and lever is between 20° and 50°.

Appellee's witness Mr. Langton, the president of the National Skateboard Association, Inc., testified to his early experience with primitive wood plank skateboards in the 1950's. He indicated that he did not perform many maneuvers on such boards and could recall only "straight ahead type of riding on an inclined hill or street." Mr. Langton did not become actively involved in skateboarding until 1976, so his testimony provides us with no understanding of the teachings of the rocker board concerning maneuverability at the time of appellant's invention.

Mr. Langton, an admittedly poor skateboard rider, found no difference in maneuverability between a rocker and a flat board. It was his opinion that the kicktail has achieved its commercial success for cosmetic reasons. The National Skateboard Association, Inc. has a manufacturing division that makes and sells skateboards of which ninety-five percent are kicktail skateboards.

Appellee's last witness was Mr. Criswell, who first began skateboarding in 1966 with a rocker board. He stopped for 19 months while in the military service, then began again at the end of 1969. However, Mr. Criswell provided no testimony with regard to any advantages of maneuverability to be gained from the up-swept tail of the rocker board during this period prior to appellant's invention. From his testimony, Mr. Criswell appears to be a very accomplished skateboarder who has participated competitively since 1975. He testified that a rocker board would have certain advantages over a flat board or a kicktail in bowl riding, which involves thrusting your weight up the side of a bank or bowl, turning at the top, then shooting down the bowl. However, he was in one bowl riding contest and used a kicktail skateboard. He has participated in free-style contests using a kicktail. Freestyle contests require each skateboarder to put together a performance routine requiring continuity of many tricks or maneuvers. He rides the same kicktail in downhill slalom races. He uses a kicktail "mostly just to know where [his] foot is, knowing where the back is. It's a feel."

When he was asked why kicktails have captured so large a segment of the market, he suggested that it was "probably because everybody in California rides them," though he was not sure why. We observe that Mr. Criswell, who by his testimony has been clearly established to be a highly proficient skateboarder, contracts for the manufacture of and distributes skateboards, 100% of which are kicktails, and uses a kicktail board himself in his exhibitions and competitive events.

Appellant's witness, Mr. Radkey, is a research scientist for a firm engaged by appellant to conduct an analysis of mechanical advantages of the geometry of the kicktail deck over the flat and rocker decks. His conclusions drawn from this analysis generally support specific advantages for the kicktail deck. In cross examination, Mr. Radkey did surmise that a rocker board and a kicktail board of a given identical angle would perform identically in regard to certain elements of his static analysis of the board geometries.

Mr. Radkey, however, did no physical testing of the skateboards and has never ridden a skateboard.

Appellant's witness, Mr. Graham, is president of the Pro-Am Skateboard Racing Asso., and has worked actively organizing various skateboard competitions. He testified that the kicktail provides definite advantages in performing free-style maneuvers. At appellant's request, Mr. Graham conducted a survey of the 500 members of his association, with 45% responding to the survey requests. The survey comprised 19 questions. A substantial number of members had ridden the flat, the rocker, and the kicktail. The results of the survey indicated a decided preference for the kicktail.

This leaves the testimony of appellant, Mr. Stevenson, to consider. Appellant acknowledged the existence of the rocker prior to his invention. He testified that the purpose of the rocker design was to simulate visually the look of a surfboard, with a visual function as opposed to the mechanical function of the kicktail.

Mr. Stevenson submitted a collection of five affidavits. The five affiants are all experienced skateboarders with competitive experience, some professional. The affiants all have ridden flats, rockers, and kicktails and all find the kicktail to be superior to the others. The affiants all agree that far greater maneuverability is possible with the kicktail. They all cite particular problems of imbalance associated with the rocker board.

### 2) Commercial Success

■ The brief for the Taiwan manufacturers improperly asserts that commercial success can only tip the scales in favor of patentability in close cases. The cases cited by the Taiwan manufacturers, *Digitronics Corp. v. New York Racing Association, Inc.,* 553 F.2d 740, 193 USPQ 577 (2d Cir. 1977), *International Telephone and Telegraph Corp. v. Raychem Corp.,* 538 F.2d 453, 191 USPQ 1 (1st Cir. 1976), and cases cited therein, support their view that "[o]nly in a close case, in which application of the subjective criteria of nonobviousness in 35 U.S.C. § 103 does not produce a firm conclusion, can these objective or secondary considerations be used to 'tip the scales in favor of patentability.' " *Digitronics,* supra at 748, 193 USPQ at 584. Contrary to the statement in *Digitronics,* we find nothing in *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784, 189 USPQ 449 (1976) that "laid to rest" the view followed by this court and enunciated in *Graham v. John Deere Co.,* supra, 381 U.S. at 17, 36, 86 S.Ct. 684, 148 USPQ at 467, 474. The inference of obviousness drawn from prior art disclosures is only prima facie justification for drawing the ultimate legal conclusion that the claimed invention is obvious under 35 U.S.C. § 103. Therefore, it is necessary that such secondary considerations also be evaluated in determining the final validity of that legal conclusion. As presented in *John Deere,* such secondary considerations may serve to "guard against slipping into hindsight" and "to resist the temptation to read into the prior art the teachings of the invention in issue."

The ALJ found as fact, and it has been undisputed by either party, that presently kicktail skateboards constitute approximately 90–95% of production and sales in the skateboard industry. It is also clear from the record that the only difference between appellant's kicktail skateboard and the prior art flat skateboard is the provision by appellant of "an inclined foot-depressible lever coupled to the rearward end section of the platform." Appellant has submitted five affidavits of experienced competitive skateboarders to attest to the fact that the kicktail is superior and provides far greater maneuverability than the flat or rocker boards. The survey of the members of the Pro-Am Skateboard Racing Asso. supports these affidavits by showing a decided preference for the kicktail because of its functional attributes. We also note that the majority opinion of Commissioners Moore and Bedell, as well as the ALJ, found the kicktail to possess functional advantages over the rocker. See n.3 supra. These factors establish prima facie a nexus between commercial success and the merit of appellant's invention, the provision of an inclined foot-depressible lever. *In re Felton,* 484 F.2d 495, 179 USPQ 295 (CCPA 1973); *In re Caveney,* 386 F.2d 917, 55 Cust. & Pat.App. 721, 155 USPQ 681 (1967).

In rebuttal, to show that the commercial success is unrelated to the merits of the invention, appellees have presented one witness, Mr. Langton, who gave his opinion that the commercial success was due to cosmetic reasons. Appellees presented one other witness, Mr. Criswell, who was not sure why kicktails have captured so large a segment of the market. Mr. Criswell is a highly proficient skateboarder who uses the kicktail because it helps him to know where his foot is. We earlier noted that Mr. Criswell, like Mr. Langton, has a personal financial interest in kicktail skateboards.

■ Thus, appellees have chosen to rebut appellant's prima facie nexus between commercial success and the merit of his invention with the opinion testimony of a single witness with a demonstrated financial interest in the outcome. As noted earlier, we

must subject such testimony to close scrutiny. *The Barbed Wire Patent,* supra; *Jones Knitting Corp. v. Morgan,* supra.

We consider the testimony proffered by appellee to be insufficient to overcome the evidentiary value of that of appellants. The net result is a positive inference that the claimed skateboard would have been unobvious at the time the invention was made to one of ordinary skill in the art.

After reviewing the evidence which has been summarized above, we find there is no evidence of record that would have suggested to one having ordinary skill in the art at the time of appellant's invention that the up-swept tail of the rocker board would function to provide improved maneuverability. In fact, there is substantial evidence to the contrary that problems of imbalance result from the curved deck of the rocker. There is nothing in the testimony of appellee's witnesses to suggest that one having ordinary skill in the art would have found it obvious to modify either the flat or the rocker boards in such a manner as to result in the claimed kicktail skateboard. The evidence tends to support a finding that definite advantages in maneuverability adhere to the claimed skateboard configuration. To read into the up-swept tail of the rocker board the teachings of appellant's kicktail is precisely the hindsight reasoning cautioned against in *Graham v. John Deere,* supra. Simplicity and hindsight are not proper criteria for resolving the issue of obviousness. *In re Van Wanderham,* 378 F.2d 981, 54 Cust. & Pat.App. 1487, 154 USPQ 20 (1967).

### Infringement

■ Claim 1 requires "an inclined foot-depressible lever coupled to the rearward end section of the platform." There are narrower claims in the patent than those we have considered in this action which restrict the construction of the lever to the tubular construction shown in the drawings and appellant's preferred embodiment. It is not necessary to describe in the specification all possible forms in which the claimed limitation may be reduced to practice.

Thus, we do not construe a broad claim to contain limitations expressed in the more narrow claims. *Smith v. Snow,* 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721, 24 USPQ 26 (1935). In the instant case it is the provision by appellant of an inclined foot-depressible lever rather than the specific manner in which it is coupled to the skateboard platform which more accurately reflects appellant's invention. Therefore, we agree with the Commission that the term "coupled" is sufficiently broad to read on the one-piece molded skateboard platform of SX–5. See n.2, stipulation (6) supra. We therefore need not consider application of the doctrine of equivalents.

### Unenforceability

The Taiwan manufacturers assert that the Stevenson patent is unenforceable because during its prosecution before the Patent and Trademark Office (PTO), the patentee failed to disclose relevant prior art, i. e., the rocker board, to the examiner. Further, it is asserted that the patentee affirmatively misrepresented to the examiner the state of the art of skateboard construction in regard to (a) claiming adjustable wheels and (b) disclosing the means of attaching wheel assemblies to the skateboard platform. Therefore, they argue, the patent is unenforceable because it was obtained through inequitable conduct.

We turn to our opinion in *Norton v. Curtiss,* 433 F.2d 779, 57 Cust. & Pat.App. 1384, 167 USPQ 532 (1970), for guidance in evaluating these charges of misconduct.

The Stevenson patent was allowed on the first action by the PTO. Consequently, the file history provides no representations made by Stevenson to the PTO other than those representations contained in the original application. Stevensn did disclose the conventional flat skateboard in his specification. He did not disclose the rocker board to the PTO.

■ Stevenson has testified that he knew of the rocker board, that they were very common-place, and that he himself had built one for years. He did not disclose the

rocker board to the PTO because "[t]hey did not work. It was so dramatically different that * * * [he] just could not conceive * * * why there would be any need to try to draw any parallel or any connection there. They are different, they don't work the same; their effective use is different, the market." The evidence of record discussed above, including the consideration of commercial success, support these distinctions made by Mr. Stevenson. He clearly considered the conventional flat skateboard to be the most relevant prior art. Absent any evidence of bad faith on the part of Mr. Stevenson, we are precluded from any finding of fraud or inequitable conduct on his part by his failure to disclose the rocker board to the PTO. *Id.* 433 F.2d at 795, 57 Cust. & Pat.App. at 1406, 167 USPQ at 545.

■ We find no merit in appellee's assertions of misrepresentations by Stevenson in regard to (a) claiming adjustable wheels and (b) disclosing the means of attaching wheel assemblies to the skateboard. In dependent claim 11, Stevenson claims adjustable wheels in combination with his kicktail platform structure. It is inconceivable that this limitation in a dependent claim, standing alone, in any way represents that he has invented adjustable wheels. He is claiming his kicktail platform structure in combination with adjustable wheels. He has in no way relied on this combination for the patentability of the independent claim. Similarly, his disclosure that the wheel assemblies are secured to the platform "by wood screws or the like" in no way teaches away from the use of rivets and bolts or any other known fastening devices. Such assertions by appellees are unfounded and unsupported by any evidence. Bare assertions can not provide the clear and convincing evidence required to establish fraud or inequitable conduct. *Id.* 433 F.2d at 797, 57 Cust. & Pat.App. at 1408, 167 USPQ at 547.

### Conclusion

Accordingly, we conclude, from the evidence of record, that appellees have failed to carry their burden of persuasion in asserting the invalidity of the subject claims of the Stevenson patent.

We reverse the Commission's determination that there is no violation of § 337 because, from the evidence of record, we conclude that the subject matter as a whole of claims 1, 2, 7 and 8 of the Stevenson patent would not have been obvious to one of ordinary skill in the art of designing skateboards at the time the invention was made. We remand to the Commission for action consistent with this opinion.