**AMERICAN CAN COMPANY,
Plaintiff-Appellant,**

v.

**CROWN CORK & SEAL COMPANY,
INC., Defendant-Appellee.**

**No. 81–2500.**

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1982.

Decided Nov. 17, 1982.

J. Randolph Wilson, Covington & Burling, Washington, D.C., for plaintiff-appellant.

H. Francis Delone, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and CAMPBELL,* Senior District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff, American Can Company, charged defendant, Crown Cork & Seal Company, Inc., with violating American's 1967 patent on a one piece seamless cup-like steel container and the drawing and ironing process for making it.** Crown, with a similar product, denied infringement and further claimed that the patent was invalid under 35 U.S.C. § 102(b) because American had put its patented invention "on sale" more than one year prior to filing its patent application on May 4, 1964. Judge Reynolds agreed with Crown on invalidity and,

therefore, did not reach the infringement issue. Attorneys' fees were awarded under 35 U.S.C. § 285 to Crown on the basis that American had misrepresented material matters to the Patent Office and prosecuted this lawsuit in bad faith. American appeals.

The general object of the invention was, by the use of low carbon steel sheet stock electro-plated with tin having a matte finish, and using a suitable oil-type lubricant, to draw and iron out a thin-walled seamless cup-shaped steel container to be capped and used commercially, for example, as an aerosol dispenser for shaving cream or hair spray. The matte tin finish resulting from electroplating was not new nor was drawing and ironing a new process to produce a can. Understandably, drawing and ironing could be more easily used to produce aluminum cans, but using steel was a difficult problem. The matte finish helped in the use of lubricant to prevent friction in the process which otherwise could damage the product.

American characterizes the only two claims of its patent involved in this appeal as first, a "lubrication system permitting high speed, mass-production of seamless steel cans through the drawing and ironing process," and secondly, the "particular type of container made with that system." We consider the first claim to be mischaracterized, since a lubricant is mentioned only as a coating for the steel and is not emphasized. If it was intended as a claim for a lubrication system, it should have been so stated, as otherwise it is too obscure. In any event, there is no mention of "high-speed, mass-production." The second claim, however, is straight-forward and accurately paraphrased.

Judge Reynolds filed detailed findings of fact and conclusions of law which American criticizes as largely adopted from Crown's submission. A few substantive errors are also alleged. A general criticism is also leveled at the year and a half delay after

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

** U.S. Patent No. 3,360,157.

trial before the findings were issued. Judge Reynolds took note of that delay and assured counsel that the order was based on his good recollection of the evidence and reflected his view of the matter at the time the trial was concluded. It is preferable, of course, that a trial judge evidence in his findings an independent review of the record, but as a practical matter reversing merely because findings do not evidence sufficient originality in relating the same material would serve little purpose. *City of Mishawaka, Indiana v. American Electric Power Co., Inc.,* 616 F.2d 976 (7th Cir.1980), cert. denied, 449 U.S. 1096, 101 S.Ct. 892, 66 L.Ed.2d 824 (1981). We have independently reviewed the record including the documents, correspondence and depositions, and as a result substantially adopt Judge Reynolds' "on sale" findings. We are fully satisfied that they are not clearly erroneous and cannot say that we have a definite and firm conviction that a mistake has been committed. *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

■ The evidence of sale centers on the relationship between American and the Gillette Safety Razor Company, which began in 1961 and continued to July of 1964. For the purpose of this opinion, there is no need to detail all the evidence. American characterizes the relationship with Gillette as an "American-Gillette" developmental and experimental program which, if correct, would constitute an exception to the bar of 35 U.S.C. § 102(b).[1] *Red Cross Mfg. Corp. v. Toro Sales Co.,* 525 F.2d 1135 (7th Cir.1975). However, the burden of establishing that exception rests upon American and requires "full, unequivocal and convincing evidence." 525 F.2d at 1139–40. American did not sustain that burden.

For about three years prior to the critical date of May 4, 1964, there was admittedly an on-going relationship between American and Gillette, but Gillette was a customer, not a joint entrepreneur with American in the development of the seamless steel can. The most that can be said for American's position is that at times American's sales staff in negotiating with customer Gillette appears to have been a little more optimistic about being able to satisfy Gillette's substantial quantity demands than American's production staff.

■ In summary, American sent Gillette thousands of the containers; quoted prices; agreed on quantity and sizes; installed machinery to manufacture the cans; offered a warranty; received purchase orders; selected the name, "Pressure Master," for the can; commissioned an outside consumer survey; calculated its rate of return; obtained detailed specifications from Gillette even as to packing; and announced its new can in its annual report. American was vigorously after Gillette's business. The preliminary cans sent to Gillette were necessary for Gillette to determine their suitability and desirability preparatory to contemplated full use of the can, not solely, as claimed by American, for experimental development in a common enterprise. American labels Gillette a partner in the development, but their arms length sales negotiations are not the indicia of partnership. American sales efforts were in anticipation of the successful fulfillment of their production plans. American does not qualify for the experiment exception. *Amphenol Corp. v. General Time Corp.,* 397 F.2d 431 (7th Cir.1968). Judge Swygert said in *Koehring Co. v. National Automatic Tool Co.,* 362 F.2d 100, 103–104 (7th Cir.1966), that the guise of experimentation cannot be permitted to obscure full-scale efforts to secure a competitive advantage.

■ American had work to do, it is true, on its invention before it could fully satisfy Gillette's orders, but American had a product which Gillette, in response to American's sales efforts, sought to order and obtain from American in quantities. That

---

1. 35 U.S.C. § 102(b) provides in pertinent part: A person shall be entitled to a patent unless—

\* \* \* \* \* \*

(b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ....

American could not fully meet Gillette's demand did not mean its product was not "on sale." *Dart Industries, Inc. v. E.I. Du Pont De Nemours and Co.*, 489 F.2d 1359, 1365 (7th Cir.1973), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974). By 1964, American was able to produce 100,000 of the cans. The invention was more than a model in a corner of the inventor's basement. Gillette did not pay for the preliminary cans it received but that does not make it an experiment. The evidence demonstrates it was all part of a sales effort with American anticipating a profitable future. Gillette finally could wait no longer for American to supply its needs. That was properly described by one of American's officers as "a temporary marketing setback." *Amphenol Corp. v. General Time Corp.*, 397 F.2d at 437.

American concedes that they began a sales effort about July 23, 1964, less than three months after the critical date of May 4, 1964. The evidence of American's product being "on sale" does not lend itself to such fine tuning.

■ Nor can American escape the consequences of its sales activities by belatedly trying to rewrite its patent into one for a process for high speed mass production of cans in commercial quantities. From a fair reading of American's two claims, *see Blacksmith, Inc. v. Lindsay Bros.*, 605 F.2d 341 (7th Cir.1979), the patent may be defined in its simplest terms as being for drawing and ironing matte tinplate into a seamless container. That container is what American was endeavoring to sell to Gillette for more than one year before American applied for its patent. We affirm the district court's finding that the patent was invalid under 35 U.S.C. § 102(b).

Following the invalidity finding, Judge Reynolds allowed Crown its costs and reasonable attorneys' fees as an exceptional case within 35 U.S.C. § 285[2] because of American's conduct before the patent office and its prosecution of this suit. Although,

as Judge Reynolds is aware, we have been careful not to brand a case as exceptional for this purpose, *Scheller-Globe Corp. v. Milsco Mfg. Co.*, 636 F.2d 177 (7th Cir.1980), we believe that this case justifies the allowance. The findings of the court made on this issue cannot be labeled clearly erroneous. *Shelco, Inc. v. Dow Chemical Co.*, 466 F.2d 613, 618 (7th Cir.1972), *cert. denied*, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972). That being so, the award cannot be considered an abuse of discretion. *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (7th Cir.1981).

■ We have approved the award of fees when the patentee was guilty of bad faith or fraud in asserting the validity of his application, *Shelco, Inc. v. Dow Chemical Co.*, 466 F.2d at 618, or was guilty of misconduct during the litigation in asserting the validity of the patent. *Skil Corp. v. Lucerne Products, Inc.*, 503 F.2d 745, 750 (7th Cir.1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). A finding of traditional fraud is not necessarily a prelude to the award. *Id.* at 750. *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288 (9th Cir. 1969). Innocent or negligent omissions or misstatements before the Patent Office do not justify the award, but willfulness or bad faith if established by clear and convincing evidence are adequate even if not equalling fraud. *Super Products Corp. v. D P Way Corp.*, 546 F.2d 748, 758 (7th Cir. 1976).

American argues that even if one of Judge Reynolds' several findings on this issue is erroneous, the award must fail as it was only the combination of all the factors that Judge Reynolds found sufficient to support the allowance. However, he did not say that in his findings and we do not interpret them to require that conclusion.

■ The "on sale" activities were of such extent, duration and character that for American to have revealed them would un-

---

**2.** 35 U.S.C. § 285 provides:

The Court in exceptional cases may award reasonable attorney fees to the prevailing

party.

doubtedly have barred the issuance of the patent under Section 102(b). The on-going negotiations with Gillette were not a closely guarded company secret confined only to those having no contact with the patent application. The responsible people in American from its president to the co-inventors had knowledge of the marketing activities, although the inventors denied it under oath in the patent application. The statutory bar was known and the sales activities were known, but American attempted to avoid the resulting consequences. Nothing about the sales activities was revealed to the examiner for his consideration. American's lawyers should have been alerted to the sales possibility considering all of the circumstances even if they lacked actual knowledge. The sales activities in this case cannot be considered merely some isolated, ambiguous, good faith incident to be ignored. We consider the sales activities adequate justification for the award standing alone.

However, in addition, there was the matter of American's application for a similar Japanese patent more than a year prior to its corresponding American application which Judge Reynolds found should have been disclosed. American objects because the trial court failed to specifically find that anyone involved with the American application knew of the Japanese application, believed it would bar patentability or that it was more material than prior art cited by the Patent Office. It is true the trial court did not go into explicit detail, but those findings are implicit in what was found.

Judge Reynolds found further that American misrepresented to the examiner that matte finish tinplate was not generally available in commerce, thereby breaching its duty of candor and good faith. American attempts to argue this away, but even if its interpretation of the record is correct and reasonable, it does not change the result.

Judge Reynolds also found misconduct in American's representation to the Patent Office which stressed the impor-

tance of the lack of tin iron alloy in matte tinplate as affecting its susceptibility to be drawn and ironed. It was known to American's patent attorney, however, that one of the co-inventors did not consider that to be a correct analysis. Later, American's internal correspondence in which the co-inventor had expressed his contrary view was submitted to the Patent Office in connection with a request for a certificate of correction of the patent in some detail irrelevant to this case. That portion of the co-inventor's letter, however, containing the contrary view had been obliterated before submission to the Patent Office. American concedes that the contrary view was concealed, but argues that the co-inventor actually was wrong in his expressed view about the matter, so therefore it now makes no difference. American's hindsight as to what the correct technical view may ultimately have been determined to be does not excuse its less than candid behavior prior to that time. The total memorandum of the co-inventor was less than a page and a half in length including the blank space where the contradictory statement had originally been expressed. To have permitted the Patent Office to see that entire memorandum would not have constituted a burden on that office. The blatant concealment of this information from the Patent Office demonstrates American's unsatisfactory conduct. It is sufficient to constitute this an exceptional case justifying Judge Reynolds' award of fees.

The judgment is affirmed and the case remanded for a determination of reasonable fees and expenses to be assessed against American.