**KIMBERLY–CLARK CORPORATION,**
**Plaintiff,**

**v.**

**JOHNSON & JOHNSON, and Personal Products Company, Defendants.**

No. 81 C 5262.

United States District Court,
N.D. Illinois, E.D.

April 5, 1983.

Phillip H. Mayer, Berton Scott Sheppard, Charles H. Mottier, Chicago, Ill. (Leydig, Voit, Osann, Mayer & Holt, Ltd., Chicago, Ill.), for plaintiff.

Thomas C. Morrison, Lynn P. Freedman, New York City (Patterson, Belknap, Webb & Tyler, New York City), for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This patent case was tried to the court February 1–4, 1983 and is before the court for ruling on plaintiff's claim for breach of contract and defendant's counterclaim for a declaration that plaintiff's patent in suit is invalid. The court previously has entered Findings of Fact and Conclusions of Law with respect to plaintiff's claim of patent infringement and found those issues in favor of the defendant.

This memorandum opinion constitutes the court's findings of fact and conclusions of law with respect to the counterclaim and plaintiff's claim for breach of contract. The stipulation of uncontested facts contained in the Pre-Trial Order and the facts stated in the court's Findings of Fact and Conclusions of Law entered on the infringement claim are incorporated by reference. Specific reference will be made in this opinion to the court's findings with respect to disputed factual issues. However, this opinion will not set forth in detail the undisputed facts. If either party be-

lieves that further findings are necessary for any purpose, an appropriate motion should be filed within 10 days following the docketing of this opinion.

## Counterclaim for Patent Invalidity

The patent in suit is the Roeder patent, patent No. 3,672,371, issued June 27, 1972. It is a patent for a sanitary napkin with an improved adhesive fastening means, specifically two or more strips of adhesive which penetrate into the napkin and seal the overlap of the non-woven cover of the napkin. The adhesive also serves to attach the napkin to the user's undergarment. The Examiner specifically twice rejected a patent on the mere use of two or more adhesive lines. Penetration and sealing by two or more adhesive lines was the key to the discovery accepted by the Examiner.

The defendant claims that the Roeder patent is invalid because it is obvious and plaintiff committed fraud on the Patent Office in failing to disclose certain prior art. Each of these issues will be discussed.

## Fraud on the Patent Office

■ A patent applicant has a duty to disclose all facts which are material to his application. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 818, 65 S.Ct. 993, 999, 89 L.Ed. 1381 (1945). A failure to comply with this duty constitutes fraud on the Patent Office and is a basis for a declaration of patent invalidity or unenforceability.

■ A fact is material, and therefore required to be disclosed, when there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. Patent Office Rules of Practice, 37 C.F.R. § 1.56(a). The plaintiff failed to disclose the Tyrrell, Beery and Joa patents and prior work done by plaintiff's research department. The question is whether any of this was material.

■ The Tyrrell patent, patent No. 3,315,677, was issued in 1967 and it related to a disposable shield having two strips of transfer tape extending longitudinally along the side edges of the shield.[1] Thus, the discovery included the use of two narrow, longitudinal strips of adhesive used to attach the shield to the user's undergarment. One of plaintiff's witnesses, Dr. Howard Whitehead, testified that the Tyrrell patent uses two lines of adhesive, of any type of adhesive, not necessarily two-sided tape, on the exterior of a plastic baffle. (T. 202). Since the Roeder patent was originally and primarily sought solely for the use of two or more narrow, longitudinal adhesive lines (as opposed to a single adhesive line then being used in the industry), the failure to recite the Tyrrell patent is puzzling.

Certain prior art disclosed in the Roeder patent did disclose the use of two or more two-sided tapes as the adhesive system. (See Figs. 5 and 6 in the Roeder patent). Also, the Roeder patent states with respect to disclosed prior art: "In each of these patents the attachment means usually comprises one or several strips or patches of pressure sensitive adhesive disposed in various locations on the bottom surface of the napkin." (See col. 1 of Roeder patent). Thus, the prior use of more than a single line of adhesive was disclosed to the Patent Examiner.

Under these circumstances, plaintiff might argue that Tyrrell, another example of the use of more than one adhesive line, was not more pertinent than the prior art actually cited to the Patent Office. However, to establish the Roeder invention as an improvement on the disclosed prior art, the plaintiff heavily emphasized to the Examiner Roeder's use of two narrow lines of adhesive extending longitudinally on the bottom of the pad and centrally disposed thereon with respect to the sides and ends thereof. (DX 31, p. 19). Of the two features of the double lines, (1) being longitu-

1. While the shield is not a sanitary napkin, it is an elongated pad of absorbent material superimposed on a water-resistant ply which is attached to the user's undergarment and provides protection.

dinal and (2) centrally disposed with respect to the sides and ends, the Tyrrell patent discloses the first. The fact that the Tyrrell lines are not also centrally disposed with respect to the sides and ends of the pads does not sufficiently distinguish Tyrrell from the Roeder invention. The Tyrrell patent was material and more pertinent than the prior art actually cited to the Patent Office.

This materiality is further demonstrated by the fact that the plaintiff affirmatively stated to the Examiner in an amendment to the patent application as follows:

> Accordingly there is no obvious or logical reason derivable from the prior art which would prompt anyone to use a set of narrow longitudinal lines rather than one wide longitudinal line or a number of wide patches as a preferred attachment means. (DX 31, p. 30).

The plaintiff concluded by saying that Roeder "conceived the idea of using two narrow strips" and that "the prior art neither shows nor suggests" Roeder's structure. DX 31, p. 30–31.

This argument urged, in part, that there was no prior art showing two narrow longitudinal lines instead of a single, wide, longitudinal line. Tyrrell shows otherwise and a reasonable examiner certainly would have wanted to know about Tyrrell in assessing the plaintiff's amendment to the Roeder patent application. The plaintiff affirmatively misled the Examiner.

The Tyrrell patent was known to the patent agent who prepared the Roeder patent, Raymond Miller, because he did disclose Tyrrell in an earlier application he made for the Champaigne patent (discussed below) which also related to a substantially identical product. There was only a three-month period separating the two applications.

An adhesive strip on a sanitary napkin which used the penetration feature of the Roeder adhesive strip was first disclosed in the Beery patent, patent No. 2,578,664, issued in 1951. Although Beery used a single strip of adhesive, it clearly described the penetration feature so heavily relied upon by the plaintiff in obtaining the Roeder patent. The Joa patent, patent No. 2,839,059, issued in 1958 and it disclosed the use of an adhesive line which penetrated through the napkin wrapper and sealed the wrapper. The use of penetration and sealing was thus fully disclosed by the Beery and Joa patents. Both of these patents were known to Mr. Miller; he actually disclosed them in another patent application for Roeder (DX 43).

The Beery and Joa patents were material and also more pertinent than the prior art actually cited to the Patent Office. The exact elements of penetration and sealing which were the essence of the discovery patented in Roeder are disclosed in Beery and Joa. The fact that each involved only a single adhesive line does not detract from their clear relevance to the Examiner's decision to grant the patent. (Even if a patent examiner could believe that two lines that penetrate and seal is better than one line, and patentable, he certainly would want to know about Beery and Joa before making that decision.)

The failure to disclose Beery and Joa may be explained by the fact that the plaintiff, the patent agent, and even the inventor himself did not consider that penetration and sealing by two adhesive lines rather than one adhesive line was the real discovery. What they originally sought in claims 1 through 4 of the application was a patent on two adhesive lines. The Examiner's repeated rejections of these claims pushed the plaintiff and Miller to rescue the situation by isolating the penetration and sealing features which flow from the use of adhesive.[2] The shift in emphasis to

---

2. The inventor, Roeder, was not consulted at this time in connection with the amendment to the patent application and he was not aware of the narrow scope of his patent until this litigation. (T. 108). One of the plaintiff's witnesses Dr. Whitehead, was similarly candid and admit-

ted that he was not aware of the fact that penetration and sealing were the principal features of the Roeder patent until after the plaintiff's decision to bring this infringement action against the defendant. (T. 234).

these features very likely was done without the necessary research of prior art. In the rush to patent something that disclosed two adhesive lines rather than one line, the plaintiff failed to fulfill its duty to the Patent Office.

Miller did not appear to testify. At his pre-trial deposition he testified that he would be available to testify at trial. The plaintiff continues to employ Miller as a consultant and presumably he is within their control although beyond the subpoena power of this court. Miller's explanation at his deposition for the failure to disclose Tyrrell is less than persuasive. The failure to produce Miller creates an inference that his testimony would be adverse to the plaintiff.

Next the defendant argues that prior work done by plaintiff's research department, specifically by Carolyn Mobley and John Champaigne, was not disclosed and that this failure also constitutes fraud on the Patent Office. I agree.

In 1967, the plaintiff's research department was attempting to develop a flushable sanitary napkin which adhered to the user's undergarment, but which did not use a system which required a two-sided tape. Two-sided tape had been commercially successful on a mini-sanitary napkin, but it was deemed too expensive for the larger market for full-sized napkins. Emulsion adhesives were tried and in connection with these experiments, Ms. Mobley noticed that the adhesives penetrated. She then conducted a specific experiment to determine whether the adhesives would penetrate. They did, and that discovery was noted in her laboratory notebook. (DX 13). Mobley's "discovery" was not disclosed to the Patent Office, yet it was clearly relevant to the claimed invention.

On February 5, 1970, the plaintiff filed a patent applicable for a flushable sanitary napkin with adhesive attachment means. This resulted in the issuance of the Champ-

aigne patent, patent No. 3,665,923, on May 30, 1972. The Roeder patent application was filed May 8, 1970 and the patent issued June 27, 1972. The Champaigne napkin is identical to the Roeder napkin except that Champaigne uses only a single, wide adhesive strip in the center of the pad and Roeder uses two, narrow, centrally disposed, parallel adhesive strips. I find that the work done by Champaigne was known to Roeder when he "discovered" his alleged invention. Roeder worked with Champaigne in the same department, for the same supervisor. Champaigne's work and the then-pending Champaigne application were not disclosed to the Patent Office in connection with the Roeder application.

Again, the explanation may be that Roeder's discovery was thought by all concerned to be two lines instead of a single line and the fact that the adhesive line penetrated and sealed (as it did in Mobley's work and Champaigne's invention) was not considered important until the Examiner twice rejected the patent on the idea of two lines. But once the plaintiff sought a patent which relied on the penetration and sealing functions of the adhesive lines, there was an obligation to disclose the prior work performed in plaintiff's research department. Such prior work was material and more pertinent than the prior art disclosed in the application.

■ Based on the above findings, I conclude that plaintiff's failed to disclose material prior art to the Patent Office and such failure constitutes fraud on the Patent Office.[3]

*Non-obviousness*

■ Patents are presumed to be valid, but that presumption is weakened when, as in this case relevant prior art is not cited to the Patent Office. *Stevenson v. U.S. Int'l Trade Com.*, 612 F.2d 546, 551 (CCPA 1979); *Solder Removal Co. v. U.S. Int'l Trade Com.*, 582 F.2d 628, 65 Cust. &

---

**3.** In closing argument plaintiff's counsel argued that defendant had not proved intent to defraud. As I understand the law, proof of specific intent to defraud is not necessary. What is called

"fraud on the patent office" is proved by failure to disclose material prior art and the patent applicant is presumed to have knowledge of the existence of material prior art.

Pat.App. 120 (1978). In this case there is further affirmative proof of invalidity because the invention was obvious to one skilled in the art.

■ The obviousness standard is set forth in Section 103 of the Patent Act, 35 U.S.C. § 103:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in Section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

The required judicial analysis is stated in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966):

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained, and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, longfelt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

The amount of prior art was substantial. Some of the prior art is discussed in the prior section of this memorandum opinion. In addition, the Pre-Trial Order lists numerous other patents which had issued prior to Roeder's reduction to practice (April 14, 1969). These patents are summarized at pp. 52–56 of Defendants' Trial Brief submitted to the court on January 28, 1983.

Basically, the prior art disclosed numerous sanitary napkins with various kinds of adhesive systems used to attach the napkin to the user's undergarment. The prior art disclosed the use of two or more areas of adhesive located at various places on the bottom of the napkin, the use of adhesives to seal the napkin cover, and the use of adhesives that both penetrated the napkin and sealed the cover (and in the case of the Champaigne napkin, the ends) of the napkin. The napkin developed by Champaigne during his employment with plaintiff and not disclosed to the Patent Office in the Roeder application was a duplicate of the Roeder napkin except that Roeder used only one adhesive line. Thus, the principal claims of the Roeder patent are disclosed in the prior art.

The actual and narrow difference between Roeder and prior art is the use of two or more narrow lines of adhesive that both penetrate the napkin and seal the cover of the napkin and also provide an adhesive system for attaching the napkin to the user's undergarment. The inquiry, therefore, is whether two lines of adhesive, both of which penetrate the napkin and seal the cover as opposed to only one penetrating and sealing the cover, is a non-obvious invention.

The Roeder patent states that the primary object of the invention is the substantial elimination of four specific problems: (1) shifting of the napkin during use; (ii) tearing of the napkin cover; (iii) loss of adhesive to the protective cover when that cover is removed to expose the adhesive and to the undergarment when the napkin is removed after use, and (iv) the need to use relatively large amounts of expensive adhesive or a two-sided tape. (See Col. 1 of the Roeder patent). Plaintiff argues that these problems are solved not simply by the use of two narrow lines of adhesive as opposed to one wide band of adhesive, but also by the fact that both narrow lines penetrate and seal the cover of the napkin. Plaintiff relies on the testimony of Messrs. Roeder and Whitehead and the fact that Roeder's original "Disclosure for Record or Patent Purposes" form refers to the fact that the adhesive penetrates through both layers of the wrapper material which then acts as the overlap seal of the wrapper. (PX 92).

The court finds that the primary object of the invention claimed by Roeder was accomplished just through the use of two narrow bands of adhesive and the fact that both lines of adhesive penetrated the napkin and sealed the cover was irrelevant except to some slight extent in increasing the tear strength of the cover. I reject the inconsistent testimony of Messrs. Roeder and Whitehead in light of all of the evidence in the case and particularly in light of the contemporaneous business records of the plaintiff which fail to attribute the so-called benefits of the Roeder invention to the fact of penetration and sealing. See, for example, DXs 27, 30 and 76.[4]

Plaintiff did not need a napkin with two lines of adhesive which both penetrated and sealed—it would have been adequate for all of plaintiff's purposes if only one of the adhesive lines penetrated and sealed. Once the limited (and near non-existent) function served by the penetration and sealing by a second adhesive line is thus isolated, it clearly appears that Roeder's invention is obvious in light of the prior art. The prior art showed the use of emulsion adhesives to seal napkin covers and some of those adhesives penetrated into the pad. To use two lines rather than one is obvious. It is a mere duplication of elements.

The fact that emulsion adhesives do penetrate into the typical sanitary napkin cover and pad would be a surprise to no one who thought about the issue. Sanitary napkins are designed to absorb moisture and when an adhesive is applied (as it is) with heat to the bottom of the napkin, penetration occurs. Although the court heard expert testimony on this issue, and accepts the expert's opinion, the fact of penetration under these circumstances accords with common sense, even the court's

common sense.[5] Although Mr. Roeder was not an adhesive expert, he did not have to be one in order to discover penetration. As a person experienced with the manufacture and design of sanitary napkins and working with various adhesives, it should have been obvious to him that adhesives applied with heat to the bottom of the napkin would penetrate through the napkin cover into the pad, and if the adhesive were applied over the cover overlap the penetration would also cause the cover to be sealed.

Plaintiff argues that the secondary considerations identified in *Graham v. John Deere Co., supra,* prove non-obviousness. With respect to commercial success, it appears from the evidence that defendant's napkin which used a single adhesive line enjoyed the greater commercial success for the seven-year period following its introduction to the market. (T. 236; 337–8; DX 202). The testimony on longfelt but unsolved needs was not persuasive. There may have been a need developed over time for two narrow lines of adhesive as opposed to a single wide line, but there was no need for both of those lines to penetrate into the napkin. This is the correct inquiry, because that is the essence of plaintiff's invention.

Plaintiff also relies on consumer preference. The evidence did establish that there was a consumer preference for a napkin with two adhesive lines over one adhesive line. (T. 256). But there was no evidence that the consumer perceived the penetration features of the plaintiff's double adhesive line. There was nothing to perceive except perhaps some additional tear strength of the cover. (The court's prior finding that the use of two rather than one adhesive line to penetrate and seal had

**4.** Dr. Whitehead acknowledged that there were no business documents of plaintiff of which he was aware which attributes the benefits of the Roeder invention to penetration and sealing as opposed to the mere use of two narrow lines of adhesive. (T. 255).

**5.** The expert was Dr. Jerry Miron, a renowned expert on adhesives. Dr. Miron conducted experiments using sanitary napkins and emulsion adhesives available at the time of Mr. Roeder's

experiments and he found, as the court would expect, that the adhesives penetrated. He testified as follows:

Yes, definitely somebody who has some experience with pressure-sensitive adhesive and emulsion adhesives and how they penetrate and absorb the substrates would definitely expect [to see penetration of those adhesives through the cover of the napkin]. (T. 360).

almost no significance in the final product is relevant here.)

The secondary considerations do not support a finding of nonobviousness.

In conclusion, the court finds that the plaintiff's patent is invalid because the invention is obvious.

### Breach of Contract Claim

■ The parties entered into a contract dated April 18, 1973 in which the plaintiff asserted that defendant's STAYFREE maxi-pad infringed the Roeder and Champaigne patents and defendant agreed to:

> ... change the structure of its maxi-pad feminine napkin to employ a single adhesive strip as a napkin attaching means ... so that the changed structure is indisputably out of the scope of [the Roeder patent]. (DX 164).

In the agreement the defendant did not concede the validity of either Roeder or Champaigne. The agreement provided no termination date. The defendant complied with the agreement for about seven years before developing its two adhesive line napkin which was the subject of plaintiff's infringement action.

Based on the court's findings of no infringement and patent invalidity, there has been no breach of contract. The defendant kept its contractual agreement until such time as it developed a non-infringing competitive product. Defendant's agreement to employ a single adhesive strip is not an agreement to never develop a competing, non-infringing product.

Accordingly, the court finds for the defendant on plaintiff's breach of contract claim.

### Request for Fees and Costs Under Section 285

The defendant seeks its attorney's fees under 35 U.S.C. § 285. That section provides that the court in exceptional cases may award reasonable attorney fees to the prevailing party.

■ I believe this is an exceptional case within the meaning of the statute and that the defendant is entitled to all reasonable attorneys' fees actually incurred in connection with this litigation. An award of fees is proper when the patentee was guilty of bad faith or fraud in asserting the validity of his application to the Patent Office, and a finding of traditional fraud is not a necessary prelude to the award. Although innocent or negligent omissions or misstatements before the Patent Office do not justify the award, willfulness or bad faith if established by clear and convincing evidence are adequate even if not equalling fraud. *American Can Co. v. Crown Cork & Seal Co., Inc.*, 693 F.2d 653 (7th Cir. 1982). These standards appear to be applied in most Circuits.

■ Based on the findings of fact set forth above under "Fraud on the Patent Office," I further find that the plaintiff's conduct before the Patent Office has been proved by clear and convincing evidence to have been willful and in bad faith. I note particularly the plaintiff's patent agent's failure to cite the Tyrrell, Beery and Joa patents and the plaintiff's own research department's work. Raymond Miller clearly knew about the patents and yet he chose to disclose them only when they were not pertinent. He disclosed Tyrrell in the Champaigne application, but Champaigne used only one adhesive line and Tyrrell's use of two narrow lines of adhesive was not important. Where Tyrrell was pertinent, in connection with Roeder's two adhesive lines, Miller failed to disclose Tyrrell. He disclosed Beery and Joa in connection with another Roeder patent (patent No. 3,606,887 filed February 5, 1970), but omitted them from the application for the patent in suit where penetration by the adhesive was a critical aspect of the alleged invention. The Champaigne work also was known to Miller and it was the most pertinent prior art.

I further find that the plaintiff's fraud on the Patent Office was substantial and material and fully justifies the award of attorneys' fees.

Plaintiff's conduct in several other respects might also justify and require an award of attorney's fees. This litigation

appears to have been initiated in bad faith. As noted above, neither the inventor nor his superior, Dr. Whitehead, was aware of the very narrow scope of the Roeder patent until after this litigation was commenced. The decision to sue was not based on a proper analysis of the patent.

Once the Roeder patent and the defendant's product are properly analyzed, and I have no doubt that plaintiff is able to conduct this analysis, there is no factual basis for a claim of infringement. The "facts" on which the plaintiff based its claim of infringement did not exist and there was no reasonable basis to believe that those facts did exist. For example, the fact that both of defendant's product's two adhesive lines penetrated the pad and sealed the cover of the napkin would be critical to infringement. Defendant's product had only one line which sealed the cover; the second line did not seal the cover. (Of note is the fact that plaintiff acknowledged in its 1973 contract that a product that had only one adhesive line sealing the cover would not infringe the Roeder patent.) In order to establish infringement, plaintiff's employees testified that the tissue wrap in defendant's product was in fact part of a two-ply cover. But there was no factual basis for this testimony other than Dr. Whitehead's "belief" that the defendant's tissue wrap had a real function in the defendant's product in use and was not merely a manufacturing aid and an ambiguous reference to the tissue in one of defendant's advertisements. Dr. Whitehead's unsubstantiated belief did not justify this litigation. The "two-ply wrapper" was invented for purposes of this litigation.

The defendant also argues that plaintiff's conduct in obtaining the Champaigne patent and asserting that patent against the defendant in connection with the 1973 agreement between the parties constitutes the kind of bad faith and willfulness that would justify a finding that this is an exceptional case. Defendant relies on the following exhibits: DXs 18, 60, 50 through 54 and 120. These exhibits establish, and the court finds, the following facts:

As early as 1967 John Champaigne was aware of the flushable Stilles Sanisept feminine napkin which was invented in Sweden. That feminine napkin was prior art to the Champaigne flushable napkin and it was not disclosed to the Patent Office in the Champaigne application.

In 1972, prior to the assertion of the Champaigne patent against the defendant, the plaintiff learned that three foreign patents had been issued on the Stilles Sanisept napkin and that the patents had been published in Sweden, in England and in Belgium all before November 4, 1970, the date of the Champaigne application.

At the time the Champaigne patent was asserted against the defendant, the plaintiff knew that the patent on the Swedish napkin had not been cited to the Patent Office and that "it would be difficult to enforce the Champaigne patent in the event that it is contested." (DX 18.) Nevertheless, the plaintiff asserted the Champaigne patent against the defendant and used that leverage against the defendant to get the defendant to stop using a double line of adhesive on its sanitary napkins.

I do not, however, base my finding that this is an exceptional case on the misuse of the Champaigne patent. I believe that the fraud on the Patent Office in connection with the Roeder patent is most relevant and an adequate basis for an award of attorney's fees.

Accordingly, the court concludes that judgment should be entered for the defendant and against the plaintiff on the plaintiff's claim for breach of contract and the defendant's counterclaim for a declaration of invalidity of the Roeder patent, and that the defendant is entitled to an award of all reasonable attorneys' fees actually incurred in connection with this litigation under 35 U.S.C. § 285. Defendant's application for attorneys' fees should be supported by all time records of counsel and all statements for professional services heretofore rendered by counsel to the defendant. Such application shall be filed on or before April 29, 1983. Plaintiff shall file

any opposition it may have to the amount of attorneys' fees sought on or before May 15, 1983.

It is so ordered.