MACHINERY CORPORATION OF AMERICA, Appellee,

v.

GULLFIBER AB, Gullfiber International and Marvin Schneider, Appellants.

Appeal No. 85–1049.

United States Court of Appeals, Federal Circuit.

Oct. 2, 1985.

Steven L. Friedman, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., submitted for appellants.

Ruth Moyerman and Edward D. Reibman, Whitehall, Pa., submitted for appellee.

Before DAVIS, KASHIWA and NEWMAN, Circuit Judges.

DAVIS, Circuit Judge.

This appeal is from a decision of the United States District Court for the Eastern District of Pennsylvania awarding attorney fees under 35 U.S.C. § 285 in a patent case to the plaintiff below, Machinery Corporation of America. We vacate and remand.

### I.

The underlying suit was a declaratory judgment action brought by Machinery Corporation of America (MCA) which sought a declaration that it had not infringed a patent belonging to appellants Gullfiber AB and Gullfiber International (GINT), and for other relief. The suit was partially settled and partially dismissed (without prejudice) but the district court awarded attorney fees to MCA. This appeal challenges that fee award. We now spell out in detail the facts and the proceedings.

A. *The Parties.*

Plaintiff-appellee MCA is a Pennsylvania corporation which sells industrial machinery used for the manufacture of expanded polystyrene block insulation. The inventor and licensor of this machinery, which is imported from Weiser Maschinenbau GmbH, BAD Aussee (WMB) in Austria, is Franz Josef Weiser.

One of the defendants below—appellant here—Gullfiber AB is the Swedish parent of another defendant, GINT. GINT is engaged in the manufacture, sale and distribution of fiberglass and expanded polystyrene materials used in the erection of buildings. GINT holds or is the licensee of

three related patents, U.S. Patent Nos. 4,279,847 ('847), 3,312,760 ('760) and 3,383,441 ('441), which relate to the process and use of a vacuum to cool pre-expanded polystyrene beads used in the manufacture of these materials.

At the time the complaint was filed, GINT's managing director was Jan Zembron. According to Zembron, he subsequently bought GINT's assets and now conducts business as Construction Technology. Before its purported dissolution, GINT's agent in the United States was Marvin Schneider, also a named defendant in this action. Schneider has worked since the 1940's in the polymeric materials art for Curtis Wright Research Laboratories and then for GINT.

### B. *The Dispute.*

On May 23, 1983, at the invitation of MCA, Schneider and Zembron inspected a polystyrene block molder at MCA's premises. During the inspection, Jorge Weinsperger, Vice President of MCA, operated the MCA equipment and Schneider fully checked the sequences involved in each stage of the operation. As a result of his examination, Schneider concluded that MCA's use of a vacuum process infringed GINT's rights in the '760 patent.

What happened immediately after Schneider's initial inspection is less than clear. GINT asserts that it contacted Weiser and referred him to the patent, but that Weiser failed to appear for a meeting scheduled in Austria concerning the infringement dispute. We do know, however, that on September 27, 1983, Zembron sent a letter to Horst Nitsch, the managing director of WMB, advising him that MCA was infringing the '847 and '441 patents. The letter stated that both WMB and MCA were liable for infringement and that a copy had been sent to MCA.

Upon receiving no response from either MCA or WMB, GINT gave notice (on October 21, 1983) to some 162 potential customers of MCA about the infringement dispute:

To Whom it May Concern:

Gullfiber International AB has recently been made aware of claims by manufacturers and distributors of certain block molds that their molds are using 'vacuum to cool the expanded polystyrene'. Gullfiber has practiced this art of cooling with its WMB systems under U.S. and Canadian patents, and accordingly sent the following notice of infringement [to WMB]:

"You are hereby advised that vacuum block molds that you manufacture and that are distributed by your agents in the U.S., the Machinery Corporation of America, are infringing upon our U.S. Patent No. 3,317,760, and pending reissue thereof. As you have continued to disregard our prior advice, you and your distributor and users of your equipment are all liable in this infringement and subject to our relief [*sic*] under the patent laws of the U.S." [1]

This notice was sent on GINT stationary, signed "Marvin Schneider." (The district court later said that Schneider signed in an individual capacity, *but see* Part V, *infra.*)

On November 11, 1983, MCA filed suit in the district court alleging tortious interference with contractual arrangements and seeking, *inter alia,* a declaration of non-infringement and a temporary restraining order (TRO). By order dated November 18, 1983, the district court denied MCA's motion for a TRO and scheduled a hearing for December 16, 1983 to determine whether a preliminary injunction should issue enjoining GINT from asserting to the trade that MCA was infringing its patents. In lieu of the hearing, the parties agreed that GINT would: (1) review the merits of the allegations of infringement within 30 days, utilizing the services of its expert, Howard Forman; (2) send a copy of the consent order (*see infra*) to the trade; and (3) cease sending any further communications to the

---

**1.** After the present action was filed, GINT discovered a typographical error—the U.S. Patent No. should have read 3,312,760 not 3,317,760— and sent a second notice to the trade correcting the mistake.

trade alleging infringement. The consent order, dated December 14, 1983, provided in relevant part:

> None of MCA's customers or potential customers are or will be involved in any way with such litigation or in the issues raised by it. These persons are indemnified against suit for patent infringement by Gullfiber AB, Gullfiber International (GINT) and/or Mr. Schneider.
>
> Accordingly, there is no reason whatsoever for any customer or potential customer of MCA to hesitate to do business with it because of any such past threats. All sales and service agreements may be continued or entered into with MCA without in any way being exposed to any legal claim for infringement of the patents by Gullfiber AB, Gullfiber International or Mr. Schneider.

On March 5, 1984, pursuant to GINT's investigation and required review of the allegations of infringement, the district court entered an order stating that (1) the claim for a declaration of non-infringement "has been settled," [2] (2) the claims for tortious interference with contractual arrangements are dismissed without prejudice, and (3) a hearing would be held on the issue of whether MCA is entitled to an award of attorney fees under the patent laws.

### C. The District Court's Determination.

Before the district court, MCA argued that it was entitled to attorney fees because (1) Schneider and Zembron acted in bad faith in concluding that the MCA machinery infringed the GINT patents, (2) GINT exercised bad faith in sending the notice to the trade, and (3) GINT acted in bad faith by not consulting patent counsel prior to sending the notices to the trade. In considering the first reason, the district court found that Schneider and Zembron's conclusion of infringement was an unintentional error, and therefore insufficient to support an award of attorney fees. In discussing the second two factors, the dis-

trict court stated that it would not award attorney fees in the case of "clear, although understandable, error" in pursuing an infringement claim except for the fact that GINT notified the trade without the benefit of an expert's opinion, citing this court's opinion in *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 221 USPQ 1 (Fed.Cir.1984). The district court found that GINT had consulted its Swedish in-house counsel, but stated that there was no showing of the competence of that counsel in regard to United States patent law. Another factor which the district court weighed in finding that fees should be assessed was GINT's lack of cooperation during discovery. Then, noting that GINT had dissolved and that an "agent of a disclosed principal is responsible for tortious acts individually committed," the district court found Schneider personally responsible for the payment of the fees.

Before this court, GINT asserts that there was no finding of bad faith or intentional misconduct, nor could there have been. In addition, it is argued that a mere failure to consult patent counsel before giving an erroneous notice of infringement to the trade is insufficient *by itself* to support an award of attorney fees. GINT also asserts that the district court improperly awarded fees against a disclosed agent (Schneider) who was not a proper party to the patent action.

### II.

Under 35 U.S.C. § 285, "[t]he court in exceptional [patent] cases may award reasonable attorney fees to the prevailing party." This standard may be broken down into four parts: (1) the case must be exceptional; (2) the district court may exercise its discretion; (3) the fees must be reasonable; and (4) the fees may be awarded only to the prevailing party. *See Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 293, 160 USPQ 577, 580 (9th Cir.1969). GINT

---

**2.** The district court's opinion on attorney fees states that as part of that settlement "consent

arrangements were entered into that the MCA machinery does not infringe the GINT patents."

takes issue only with the district court's treatment of the former two.

 An award of attorney fees is within the discretion of the district judge. *Orthopedic Equipment Co. v. All Orthopedic Appliances*, 707 F.2d 1376, 1384, 217 USPQ 1281, 1287 (Fed.Cir.1983). Only after the prevailing party has established the exceptional nature of the case by clear and convincing evidence should the district court decide whether or not to make the award. *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir. 1985). On appeal, this court will review the factual underpinnings made by the district court in deciding that the case is "exceptional" under the clearly erroneous standard. We "must also be satisfied that the correct *legal* standard was applied by the district court in reaching its conclusion." *Id.*, at 1583 (emphasis in original). *See also Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1538–39, 222 USPQ 553, 560 (Fed.Cir.1984). In the current appeal, appellants do not question the district court's findings of fact, but instead challenge the propriety of the legal standard applied in deciding that this case is exceptional.

 From early on, federal courts refused to adopt the "English rule" requiring the assessment of attorney fees against a losing party. Under the "American rule," the prevailing litigant is ordinarily not entitled to any attorney fees, absent statutory authority. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). A rationale for this rule is that one should not be penalized for merely defending or prosecuting a lawsuit. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 153 USPQ 432, 433 (1967).

In patent cases, the American rule was strictly followed until 1946 when Congress amended the then patent remedy statute, R.S. § 4921, to provide that the "court may in its discretion award reasonable attorney fees to the prevailing party." Patent Act of August 1, 1946, § 1, 60 Stat. 778, 35 U.S.C. § 70 (1946 ed.). This statute was construed to allow the award of fees in extraordinary cases when there was:

a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his counsel fees which prevailing litigants normally bear.

*Park-in Theatres, Inc. v. Perkins*, 190 F.2d 137, 142, 90 USPQ 163, 167 (9th Cir.1951).

The 1952 Patent Act incorporated this section, omitting explicit reference to the court's discretion, but adding the words "may" and "exceptional." 35 U.S.C. § 285, *supra*. However, the Reviser's Note for § 285 indicates that no change in meaning was intended:

This section is substantially the same as corresponding provision in R.S. 4921, 'in exceptional cases' has been added as expressing the intention of the present statute as shown by its legislative history and as interpreted by the courts.

S.Rep. No. 1979, 82nd Cong., 2d Sess. (1952), *reprinted in* 1952 U.S.Code Cong. & Ad.News 2394, 2423. *See generally Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 222 USPQ 97 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984) (in-depth summary of the relevant legislative history of the attorney fees section in the 1946 and 1952 Acts).

 Allowance of fees only in exceptional cases is based on the premise that courts should attempt to strike a balance between the interest of the patentee in protecting his statutory rights and the interest of the public in confining such rights to their legal limits. A. Ahert, *Attorney's Fees: The Patent Experience*, 57 J.Pat.Off. Soc'y 608, 614 (1975).

Appellants (the patentees here) argue that the balance generally weighs more heavily in favor of patentees and that a higher standard exists when an accused infringer seeks to collect fees. As support for this assertion, they say that a patent is presumptively valid, and therefore a pat-

entee has the right to prevent non-permissive uses by notifying the trade. We note, however, that no similar presumption attaches to an allegation of infringement and that appellants cannot hide behind the cloak of a presumption in this case solely involving infringement. *See Kaehni v. Diffraction Co.*, 342 F.Supp. 523, 535, 173 USPQ 705, 714 (D.Md.1972), *aff'd mem.*, 473 F.2d 908, 178 USPQ 321 (4th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 151, 38 L.Ed.2d 103 (1973).

We agree that the standards for entitlement to fees by a successful patentee and alleged infringer may not be precisely the same, but for a different reason than that advanced by appellants. The Senate Report to the prior statute, which as we have seen also applies to the present statute, states:

> It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits, but the discretion given the court in this respect, in addition to the present discretion to award triple damages, will discourage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty. The provision is also made general so as to enable the court to prevent a *gross injustice to an alleged infringer.* [Emphasis added.]

S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), *reprinted in* 1946 U.S.Code Cong. Serv. 1386, 1387. There is no expressed limitation in this legislative history on the award of fees to a patentee. On the other hand, in connection with an award of fees to an alleged infringer, the report mentions prevention of "a gross injustice." Such injustice certainly includes situations where a patentee has litigated in bad faith, or committed fraud or other inequitable conduct during prosecution before the Patent and Trademark Office. *See Rohm & Haas Co., supra*, 736 F.2d at 691, 222 USPQ at 99. We do not, however, decide definitively at this time whether there is a higher standard for receipt of fees by an alleged infringer—but that possibility should be borne in mind.

### III.

In assessing fees against GINT, the district court relied almost entirely on the fact that GINT failed to obtain advice from outside counsel before sending the infringement letters to the trade. As support for this position, the court cited, by analogy, our opinion in *Rosemount, Inc. v. Beckman Instruments, Inc., supra*, for the proposition that attorney fees are mandated for a patentee where there was deliberate infringement and the infringer did not previously secure legal advice as to the scope and validity of the patent. But all that we held in *Rosemount* was that the district court, under the set of facts in that case, did not abuse its discretion in concluding that the infringer had no reasonable basis for believing it had a right to do its acts of infringement. In recognizing that there is a duty to obtain competent legal advice before the initiation of possible infringing activity, we cited this court's previous opinion in *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 219 USPQ 569 (Fed.Cir.1983). 727 F.2d at 1548, 221 USPQ at 8. That opinion held that breach of this duty is merely one of the factors to be considered in ascertaining an infringer's state of mind. 717 F.2d at 1390, 219 USPQ at 576. There is no *per se* rule that an opinion letter from patent counsel will necessarily preclude a finding of willful infringement, *see e.g. Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983) (an opinion letter must be written in good faith and not be disregarded), nor is there a *per se* rule that the lack of such a letter necessarily requires a finding of willfulness. *See e.g. King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867, 226 USPQ 402, 412 (Fed.Cir.1985) (affirming the district court's finding of no willful infringement despite the failure by an infringer, who knew of the existence of the patent, to procure legal advice of counsel before the initiation of infringing activities).

■ While a letter, or lack of a letter, is evidence going to an infringer's state of

mind, its existence, or lack thereof, is not conclusive. In ascertaining an alleged infringer's state of mind, a district court must look at the totality of circumstances in determining willfulness. *See King Instrument, supra; Central Soya, supra;* and *Underwater Devices, supra.* By the same token, ascertaining a patentee's state of mind in sending infringement letters to the trade also requires the court to take into account the totality of circumstances. Failure to obtain advice of counsel does not conclusively establish, as suggested by the district court, a patentee's bad faith or in itself make the case "exceptional." Because the district court incorrectly made a *per se* rule out of the failure to seek outside advice, we cannot sustain its award but must remand for consideration of all the facts under the proper standard which we discuss in Part IV, *infra.*

### IV.

In order for MCA to recover attorney fees, there must be proof of actual wrongful intent—absent here—or of gross negligence. *See Reactive Metals & Alloys Corp., supra* at 1583; *see also Hycor Corp., supra,* 740 F.2d at 1540, 222 USPQ at 562. The gross negligence standard has been defined as requiring willful, wanton, or reckless misconduct, or evidence of "utter lack of all care." Prosser and Keeton, *The Law of Torts,* § 34 (4th Ed.1984). Thus, conduct short of fraud, but in excess of simple negligence is sufficient for deciding that the case is "exceptional" under § 285. *Mayview Corp. v. Rodstein,* 620 F.2d 1347, 205 USPQ 302 (9th Cir.1980); and *Monolith Portland Midwest Co., supra.* The end inquiry in the current case is whether GINT recklessly concluded that MCA infringed, and whether it was grossly negligent for GINT to send the letters to the trade based solely on Schneider's and its Swedish in-house counsel's conclusion.

The prior caselaw in this area sets forth some parameters for the application of this standard. In *Hughes v. Novi American, Inc.,* 724 F.2d 122, 220 USPQ 707 (Fed.Cir.

1984), this court held that the district court did not abuse its discretion in assessing attorney fees against a patentee who made, at the least, grossly negligent misrepresentations to the PTO and could not in good faith believe that the defendant's device infringed "since even a cursory reading of the claims makes obvious the fact of non-infringement." In another case, *Loctite Corp. v. Fel-Pro, Inc.,* 667 F.2d 577, 584, 213 USPQ 905 (7th Cir.1981), a patentee had been assessed fees where it initiated a suit with unconfirmed data to support its infringement claim, refused to produce any test results, and was proven to have conducted unreliable and tainted tests. Similarly, in *Maurice A. Garbell, Inc. v. Boeing Co.,* 546 F.2d 297, 192 USPQ 481 (9th Cir.1976), *cert. denied,* 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977), the patentee misled the Patent and Trademark Office during prosecution and had not made a reasonable assessment of the possibilities of infringement before bringing suit. *See also Kaehni v. Diffraction Co., supra* (the infringement question was not close enough so that scientifically-informed reasonable persons might differ); *International Indus. & Develop., Inc. v. Farbach Chem. Co.,* 145 F.Supp. 34, 110 USPQ 361 (S.D.Ohio 1956), *aff'd,* 241 F.2d 246, 112 USPQ 349 (6th Cir.1957) (bad faith in sending letters to the trade sufficient to find the case "exceptional"); *contra, Coal Processing Equipment, Inc. v. Campbell,* 578 F.Supp. 445, 211 USPQ 986 (S.D.Ohio 1981) (not an exceptional case under § 285 even though the patentee acted in bad faith when he asserted infringement in letters to the infringer and its customers).

The facts in the current case, as they now stand, do not conclusively establish that GINT made an unreasonable assessment of infringement, and therefore we could not affirm, even disregarding the district court's legal error made in connection with the failure to obtain the advice of counsel.[3] As appellee admits, "Zembron and Schneider were ... given *carte blanche* opportunity to inspect the apparat-

---

**3.** Nor do the existing facts compel an outright reversal of the fee award.

us, of which opportunity they availed themselves, and inspected the equipment fully." Schneider concluded that MCA's vacuum cooling process operated in substantially the same manner as claimed in GINT's patents. As MCA recognized, Schneider has an impressive technical background, which includes an advanced degree in chemical engineering and some mechanical engineering. Based on this fact and Schneider's investigation of MCA's machinery, it is possible that GINT might have reasonably thought that obtaining advice of counsel, over and above its own in-house Swedish counsel's advice, was unnecessary.

■ MCA argues, however, that appellants' expert Forman found non-infringement without even examining the accused apparatus. But Forman also testified that Schneider's initial conclusion of infringement was justified, and that he himself also initially thought that the MCA machinery infringed the GINT patents. In discussing these facts, the district court recognized that GINT had made an understandable error in its conclusion. Mere error does not approach the level of bad faith or gross negligence necessary to characterize a case as exceptional.

GINT argues that its prompt resolution of this action by seeking settlement also precludes a finding that this case is exceptional. Asserting that a party's conduct during litigation remains the crucial factor in determining whether to award fees, GINT fails to recognize that this is only one factor and that the district court found that it was not cooperative in arranging for the production of documents and scheduling depositions. GINT's asserted vexatious conduct during the litigation—which was not elaborated on by the district court—militates in favor of finding the case exceptional. However, the district court merely mentioned this factor in passing. While a proper factor to be considered, under the existing facts that basis is insufficient, in and of itself, to support a finding that this is an exceptional case.

Appellants also argue that MCA is the party ultimately responsible for this litigation because it instituted the suit after avoiding GINT's efforts to resolve the infringement dispute. In cases where a plaintiff/patentee was assessed fees, the rationale for the award was to reimburse the alleged infringer for defending an action improperly brought. In other cases, a patentee, who was a defendant in a declaratory judgment action, might be assessed fees where the accused infringer also proved unfair competition by the patentee shown to have sent threatening letters to the trade in bad faith. See, e.g., International Indus. & Develop., supra. In the current case, MCA brought a declaratory judgment action for non-infringement and also made a claim for unfair competition. This suit never eventuated in judgment though MCA prevailed in its claim of non-infringement. We believe that in order for GINT properly to be assessed attorney fees of such an action it did not initiate, the district court should consider whether MCA reasonably believed that its only or best recourse was to file suit. GINT argues that MCA did have an alternative in light of the fact that it attempted to contact MCA for six months prior to suit. MCA did receive a letter approximately one month prior to GINT's letters to the trade. MCA never responded. Furthermore, MCA never responded even after the letters to the trade were sent, but instead brought the present suit. The district court should take account of these facts (and of other relevant facts concerning the bringing of suit) and of their bearing on the reasonable necessity to commence litigation.

In sum, the district court applied the wrong legal standard in finding that this case is exceptional. We remand to permit the court to apply the proper standard in the light of all the facts and circumstances.

## V.

■ Since the district court may decide on remand that MCA is entitled to attorney fees, we consider GINT's assertion that

fees should not be assessed against Schneider, a disclosed agent who is not a proper party to the patent count. We recognize that when an action embraces both patent and nonpatent claims, no fees under § 285 can be awarded for time incurred in the litigation of the non-patent issues. *Stickle v. Hublein, Inc.*, 716 F.2d 1550, 1564, 219 USPQ 377, 387 (Fed.Cir.1983). Appellants argue that Schneider was a proper party only to the tortious interference claim which was dismissed, not the patent count, and therefore fees cannot be assessed against him individually.

When the district court stated that Schneider, as an agent of a disclosed principal, is responsible for tortious acts individually committed, we may assume it was referring to Schneider's erroneous conclusion of infringement, his failure to procure the advice of counsel before sending letters which he signed, and his lack of cooperation during the litigation. This court has held that an individual may be assessed fees under § 285 if his conduct supports a finding that the case is exceptional. *Hughes v. Novi American, Inc., supra.* Accordingly, Schneider may be assessed fees individually only if the district court finds that MCA has proved by clear and convincing evidence that his actions were in fact tortious or were undertaken in a personal capacity and not as agent of GINT,[4] and otherwise met the requirements set forth in Part IV, *supra.* The court may also consider whether Schneider is a successor to GINT which apparently no longer exists.

## VI.

The decision of the trial court awarding attorney fees to appellee under 35 U.S.C. § 285 is vacated and remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

4. The mere fact, without more, that Schneider signed the round-robin letter of October 21, 1983, without adding a company title does not show, in itself, that he was acting in an individual capacity (rather than as agent). Signing without a title is not an unusual practice in companies.