**XANTECH CORPORATION, Plaintiff,**

v.

**RAMCO INDUSTRIES, INC., et al., Defendants.**

**No. S87–556.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 15, 1988.

Ryan M. Fountain, South Bend, Ind., for plaintiff.

Stephen R. Bowers, Elkhart, Ind., Randall G. Litton, Frederick S. Burkhart, Grand Rapids, Mich., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on three motions filed by the defendants: (1) a motion for reconsideration of the court's order granting an award of attorney's fees pursuant to Fed.R.Civ.P. 26(c) and 37(a)(4); (2) a motion for award of expenses; and (3) a motion for expenses and attorney fees pursuant to 35 U.S.C. § 285. For the reasons set forth below, the court denies each motion.

### I. *Factual Background*

Plaintiff Xantech Corporation ("Xantech") and defendant Ramco Industries, Inc. manufacture plastic recessed lighting (also called "recessed aircraft lights") suitable for installation in the interior of vans that are customized and converted to recreational vehicles. On August 12, 1986, Xantech applied for and received a U.S. design patent (No. 291,253) for its "Europa" lamp, a recessed lighting fixture. Ramco sells a light similar in appearance, design, and function.

### A. Motion for Expenses Pursuant to 35 U.S.C. § 285

On September 24, 1987, Xantech filed a complaint alleging that the sale of certain lighting fixtures by the defendants, Ramco and its president, J. Edward Ramsey (collectively referred to herein as "Ramco"), infringed its design patent on the Europa lamp. Ramco filed an answer denying any infringement of Xantech's patent. The parties began discovery in late 1987: Xantech took Mr. Ramsey's deposition on December 17, 1987, and Ramco served a first set of interrogatories on Xantech on January 12, 1988.

Shortly thereafter, the case came to an abrupt halt, at least with regard to the merits of the infringement claim. Rather than responding to Ramco's interrogatories, Xantech filed, on February 16, 1988, a motion for dismissal with prejudice pursuant to Fed.R.Civ.P. 41. Xantech stated that, while researching documents in order to answer Ramco's interrogatories, it had discovered evidence that the patent in question would be adjudged invalid if litigated. Specifically, it was discovered that Dick Blatman, Xantech's vice-president of marketing, had engaged in limited sales activity in July, 1985, which rendered invalid the patent obtained on August 12, 1986. *See* 35 U.S.C. § 102(b) (applicant not entitled to patent if invention was "described in a

printed publication ... or in public use or on sale ... more than one year prior to the date of the application for patent"). The circumstances surrounding Xantech's discovery of this information are discussed in further detail below. Xantech further stated that it had filed a disclaimer with the Patent and Trademark Office concerning the patent in question.

On February 19, 1988, the court granted Xantech's motion to dismiss this cause with prejudice pursuant to Fed.R.Civ.P. 41(a)(2). On February 26, Ramco moved to vacate the judgment of dismissal to allow it an opportunity to file a motion requesting an award of costs and reasonable attorney fees pursuant to 35 U.S.C. § 285. On April 8, 1988, the court granted the motion to vacate and established a schedule for discovery and briefing concerning the issue of an award of costs and reasonable attorney fees. Following discovery, Ramco moved for attorney fees pursuant to 35 U.S.C. § 285.

B. Motion for an Award of Expenses

During the initial round of discovery and prior to the dismissal order, Xantech scheduled the deposition of Mr. Ramsey. In advance of the deposition, the parties agreed upon the terms of a protective order barring disclosure of confidential trade secret information Ramco was to disclose. On the scheduled date of Mr. Ramsey's deposition, December 17, 1987, counsel for Xantech, counsel for the defendants, and Mr. Ramsey signed multiple copies of a Stipulated Protective Order. At that time, counsel for Xantech represented that the terms of the order were satisfactory to his client and that Herbert Seymour, Xantech's president, would add his signature to the order. In reliance on the Stipulated Protective Order and the representation that Mr. Seymour would add his signature, Mr. Ramsey produced documents and gave testimony disclosing confidential trade secret information belonging to Ramco.

As of March 31, several months after Mr. Ramsey's deposition, Ramco had not received a copy of the Stipulated Protective Order signed by Mr. Seymour. In the intervening months, Ramco's counsel contacted Xantech's counsel on several occasions requesting Mr. Seymour's signature on the Protective Order. Specifically, Ramco's counsel had contacted Xantech's counsel by letter on January 7, February 11, and March 21, and by telephone on February 19.

Ramco's March 21 communication advised that unless Xantech provided written assurance within forty-eight hours that Mr. Seymour would sign the Stipulated Protective Order, Ramco would file a motion for a protective order with the court. On April 1, Ramco's counsel prepared a motion for a protective order and forwarded it to Ramco's local counsel for filing with the court. However, unbeknownst to Ramco, Mr. Seymour already had signed the Stipulated Protective Order (hand dated "3/22/88") and submitted it to the court. On March 29, the court signed the Stipulated Protective Order and it was entered on the docket. Ramco first learned that Mr. Seymour had signed the order on April 4, when it received a copy mailed from the clerk's office.

C. Award of Attorney Fees Pursuant to Fed.R.Civ.P. 26(c) and 37(a)(4)

In its memorandum and order vacating the order of dismissal and reopening the case, the court established a May 31 deadline for completion of discovery limited to the issue of an award of attorney fees under 35 U.S.C. § 285. During the discovery period, a disagreement arose between the parties concerning the scheduling of the depositions of Mr. Seymour and Denise Lewellyn, a Xantech representative. Pursuant to this dispute, Xantech filed a motion for a protective order on May 26, and Ramco filed a motion to compel, a motion for sanctions, and a motion for a protective order on May 27.

The court promptly conducted a telephonic hearing on the pending motions. After argument from counsel, the court granted Xantech's motion for a protective order and denied Ramco's motions. The court further ordered Ramco to reimburse Xantech in the sum of $2,500.00, reflecting the attorney fees incurred pursuant to the dis-

pute. *See* May 27, 1988 Order, docket entry # 42.

Following that order, the parties agreed that neither deposition in question would be taken.

## II. *Discussion*

### A. Motion for Reconsideration

■ In its motion for reconsideration, Ramco requests that the court vacate its May 27 order concerning an award of attorney fees pursuant to Fed.R.Civ.P. 37(a)(4) and 26(c). Ramco argues that the award of expenses should be set aside because (1) Ramco's opposition to Xantech's motion to compel was substantially justified, and (2) Ramco was denied a hearing concerning the award of sanctions.

Neither of Ramco's arguments warrants withdrawal of the May 31 order awarding sanctions. In the context of the discovery dispute concerning the scheduling of the depositions of Mr. Seymour and Ms. Lewellyn, Ramco's position was not substantially justified, and the circumstances were not such that an award of expenses was unjust.[1] At the telephonic hearing on May 27, Ramco's counsel was afforded ample opportunity to state the grounds for his clients' position concerning the scheduling of the depositions in question. Accordingly, Ramco's motion to reconsider should be denied.[2]

### B. Motion for Award of Expenses

■ Pursuant to Rule 37(a)(4), Ramco requests an award of expenses incurred in the preparation of the motion for a protective order prepared on April 1, but never filed due to receipt of the signed Stipulated Protective Order on April 4. In response, Xantech argues that Rule 37 does not apply because it requires both the filing of a motion for an order compelling discovery and the grant or denial of such a motion.

The court agrees with Xantech that Rule 37(a)(4), Fed.R.Civ.P., refers to motions "granted" or "denied". Because the motion at issue here was never even filed, the court declines to exercise any discretion it may have under Rule 37 to impose sanctions.[3]

### C. Motion for Expenses Pursuant to 35 U.S.C. § 285

■ 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party". The prevailing party bears the burden of establishing the exceptional nature of the case by clear and convincing evidence. *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 471 (Fed.Cir.1985); *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir.1985). "Exceptional" cases include those involving bad faith, fraud, or gross negligence. *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d at 473. The gross negligence standard includes willful, wanton or reckless conduct or evidence indicating "an utter lack of all care". *Id.* In other words, "conduct short of fraud, but in excess of simple negligence[,] is sufficient for deciding that the case is 'exceptional'". *Id.*; *Mayview Corp. v. Rodstein*, 620 F.2d 1347 (9th Cir.1980). Innocent or negligent omissions or misstatements do not justify an award under 35 U.S.C. § 285. *Hycor*

---

1. *Lloyd v. Cessna Aircraft Co.*, 430 F.Supp. 25 (E.D.Tenn.1976), is inapposite because it did not involve an impending discovery deadline. *See id.* at 26. Here, the discovery deadline of May 31 required the expeditious scheduling of any remaining depositions.

2. To the extent that the defendants suggest in their memorandum in support of the motion for reconsideration that an award of expenses under these circumstances discourages resort to the court to settle disputes of this nature, that incentive is consistent with underlying purposes of Rule 37(a)(4), Fed.R.Civ.P. *See* Fed.R.Civ.P. 37, Notes of Advisory Committee on Rules ("[T]he rules should deter the abuse implicit in

carrying or forcing a discovery dispute to court when no genuine dispute exists.").

3. Although the defendants argue that the failure to file the motion to compel before entry of the signed Stipulated Protective Order was merely fortuitous, they have advanced no cogent argument in support of the application of Rule 37(a)(4) to such a situation. The case on which the defendants rely, *Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173 (2d Cir.1975), *cert. denied* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976), does not support the imposition of sanctions here because it involved a party's defiance of a court order to appear at his scheduled deposition. *Id.* at 179.

*Corp. v. Schlueter Co.*, 740 F.2d 1529 (Fed. Cir.1984); *American Can Co. v. Crown Corporation and Seal Co., Inc.*, 693 F.2d 653 (7th Cir.1982).

Only after the prevailing party has established the exceptional nature of the case should the district court decide whether to award attorney fees. *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d at 471; *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d at 1582; *Kimberly Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed.Cir.1984). The Federal Circuit has left open the question of whether an alleged infringer who prevails in a suit brought by a patentee must establish that an award of fees is necessary to prevent "a gross injustice". *See Machinery Corp. of America*, 774 F.2d at 472.

### 1. Surrounding Circumstances

Under the standards discussed above, the relevant inquiry is whether Xantech's filing of the complaint constituted bad faith or gross negligence in light of the sales activities conducted by Xantech's vice-president of marketing, Mr. Blatman. Such an inquiry requires a more detailed discussion of the circumstances surrounding the discovery of Mr. Blatman's sales efforts.

In early July, 1985, Mr. Blatman set out on a one-week sales trip for the purpose of selling recessed lights. Mr. Blatman's sales trip during that week was extensive and resulted in many sales calls. While in Indiana on July 15 and 16, 1985, he met with representatives of Starcraft RV Company in Goshen, Indiana, and Kentron and TransAire International in Elkhart, Indiana. He also flew to Dallas, Texas for a meeting with Tra Tech, a van convertor in Fort Worth. As a result of these sales efforts, forty of Xantech's lights designed under the patent in question were sold and shipped to Starcraft RV on July 17.[4]

Satisfied with the results of his sales trip, Mr. Blatman drafted a "press release"[5] which was sent to several publications and customers in the industry on or about July 18, 1985. The press release announced Xantech's initiation of commercial shipment of lights designed under the patent in question. Mr. Blatman states in his deposition that he "may have consulted with Mr. Seymour in ... the wording ... [of] the [July, 1985] press release".

By the end of July, 1985, Xantech had received from its suppliers a large quantity of the necessary parts for the Europa light's full-scale production. According to Ramco, substantial activity in preparation for the sale of the Europa line of lights occurred at Xantech as early as the spring of 1985. Ramco bases this contention on Xantech's receipt of six hundred sales catalogs on July 26, 1985, which, in order to be prepared, required that initial samples of the light be prepared from a mold for use in obtaining photographs. Following preparation of the photographs, an additional two or three months were required to produce the catalog.

Mr. Seymour acted on behalf of Xantech in obtaining the patent, which involved consulting with counsel before application. Mr. Seymour initially contacted patent counsel in April, 1986 to file an application for a patent on the Europa light. Xantech's patent counsel did not file the patent application until August 12, 1986.

At trade shows in late 1986, Xantech noticed that Ramco was selling a copy of their Europa light.[6] Subsequently, Mr.

---

**4.** The lights shipped to Starcraft were made from "untextured parts" because the first shipment of textured, mass-produced parts was not available until July 29, 1985.

**5.** Although the defendants refer to this press release as "Exhibit G" in support of their motion, a copy of it is not included in the materials submitted to the court. However, Mr. Blatman's reference to the press release in his affidavit and deposition testimony is sufficient to establish that it was issued in July, 1985.

**6.** Xantech attempted to contact Ramco through a letter from counsel concerning Ramco's alleged infringement, but received no response. Ramco contends that it received none of these "cease and desist" letters before the filing of the complaint because the letters were sent to an incorrect address. Although the parties disagree as to the proper characterization of these circumstances, the court concludes that they are irrelevant to the analysis under 35 U.S.C. § 285. *See infra* at note 7.

Seymour contacted counsel concerning the filing of this suit for infringement. With regard to the validity of the patent under 35 U.S.C. § 102(b), Mr. Seymour relied on his recollection that the first public disclosure of the design in question occurred at a trade show in late 1985 and confirmation of the date of the trade show on his 1985 calendar. Mr. Seymour did not inquire of Mr. Blatman as to any sales or descriptions in printed publications that might affect validity under 35 U.S.C. § 102(b). Xantech contends that Mr. Seymour did not consult Mr. Blatman because Mr. Seymour was confident in his belief that the first sale of the Europa line of light occurred at a trade show which took place from September 12–15, 1985.

## 2. The Parties' Arguments

Ramco argues that Xantech's, specifically Mr. Seymour's, investigation prior to the filing of the complaint did not constitute a reasonable investigation of the facts on which the validity of the patent depended. Based on the inference to be drawn from the extensive preparation leading up to the initial sales activity concerning the Europa line of lights, Ramco contends that Xantech's president must have known of Mr. Blatman's prior sales activity and the resulting invalidity of the patent pursuant to 35 U.S.C. § 102(b). Ramco argues that the failure to search Xantech's files for invoices, shipping records and similar documents constitutes gross negligence in the prefiling investigation. Ramco contends further that, under 35 U.S.C. § 102(b), either the sales activity in early July, 1985 or the issuance of a press release that same month would render invalid the subsequent application for a design patent in August, 1986.

Xantech responds that this case is not exceptional because Mr. Seymour held a good faith belief that the patent in question was valid and he made at least some attempt to verify that the first sale of the Europa light had occurred less than twelve months prior to the August 12, 1986 patent application. Further, Xantech argues, its pre-filing letters to Ramco and its prompt motion to dismiss this action following its discovery of documents reflecting the July, 1985 sales activity and press release demonstrate its good faith and reasonableness in litigating this matter. Finally, Xantech argues that it would be inequitable to award the defendants attorney fees pursuant to 35 U.S.C. § 285.

## 3. Analysis

■ Ramco's motion should be denied because Ramco has not satisfied its burden to establish by clear and convincing evidence that Xantech's failure to investigate amounted to at least gross negligence. Ramco relies most heavily on its characterization of Xantech's motives in filing the suit [7] rather than actual evidence of gross negligence. The circumstances clearly indicate that Mr. Seymour did not conduct a reasonable pre-filing investigation into prior sales or publications that could affect validity under 35 U.S.C. § 102(b). *Cf. Van Berkel v. Fox Farm and Road Machinery*, 581 F.Supp. 1248 (D.Minn.1984) (with regard to filing of suit within applicable limitations period, minimal investigation into the date of the accident at issue does not satisfy Fed.R.Civ.P. 11's requirement of a reasonable pre-filing investigation of the facts).

However, Mr. Seymour's failure to consult Mr. Blatman, prior to the patent application or the filing of this lawsuit, does not constitute bad faith or gross negligence under 35 U.S.C. § 285. This conclusion is in accord with the holdings in other cases decided under 35 U.S.C. § 285 in which courts have required a greater showing than a mere negligent failure to investigate thoroughly. *See Interpart Corporation v. Italia*, 777 F.2d 678 (Fed.Cir.1985) (unsuccessful patent infringement action held to be exceptional under 35 U.S.C. § 285 where chairman of plaintiff corporation, in testimony occurring more than seven months before the filing of the infringement action,

---

7. Although Ramco's briefs also refer to Xantech's conduct during this litigation and its failure effectively to contact them concerning the alleged infringement before filing the complaint, these circumstances do not support a finding of bad faith or gross negligence.

had acknowledged that sales occurred more than one year prior to the date of the patent application and that plaintiff corporation had been selling product in question for more than six years prior to the filing of the application for a patent); *Reactive Metals Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578 (Fed.Cir.1985) (in an unsuccessful infringement action, court held that inventor's knowledge of barring sales and advertisement under 35 U.S.C. § 102(b) was not sufficient to support district court's finding of bad faith or gross negligence on the part of the plaintiff corporation); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529 (Fed.Cir. 1984) (district court's award of attorney fees based on failure to inform patent office of the barring sales and publications reversed on appeal because there was no evidence to establish that the failure to disclose was more than simple negligence); *Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed.Cir.1984) (court upheld award of attorney fees under 35 U.S.C. § 285 against plaintiff corporation and its chairman based upon chairman's failure to disclose barring sales in the patent application, representation as to those sales in answers to interrogatories posed by the defendant, and persistence in the litigation despite knowledge of the invalidating prior use and sale of the product in question); *American Can Co. v. Crown Cork and Seal Co., Inc.*, 693 F.2d 653 (7th Cir.1982) (award of attorney fees under 35 U.S.C. § 285 upheld because knowledge of marketing activities more than one year prior to the patent application was wide-spread among the president and other responsible employees of the plaintiff corporation and plaintiff corporation had applied for a similar Japanese patent more than one year prior to the application in question).[8] Accordingly, Ramco's motion for an award of fees and expenses should be denied.

### III. *Conclusion*

The court hereby DENIES each of the defendants' motions at issue here, and, further, DISMISSES THIS CAUSE WITH PREJUDICE.

SO ORDERED.

---

8. Moreover, an equitable factor counsels against an award of fees in these circumstances. In contrast to an unsuccessful infringement action in which the alleged infringer prevails on the grounds that his product is similar but non-infringing, here Ramco has received the added benefit of Xantech's disclaimer of validity.