**MOLINS PLC and John Coventry Smith, Jr., Plaintiffs,**

v.

**TEXTRON, INC., et al., Defendants.**

**Civ. A. Nos. 86–446–JJF, 87–275–JJF and 87–163–JJF.**

United States District Court,
D. Delaware.

Dec. 30, 1993.

---

Arthur G. Connolly, Jr., Rudolf E. Hutz, and Patricia Smink Rogowski, of Connolly, Bove, Lodge & Hutz, Wilmington, DE, Charles E. Pfund, and Philip G. Koenig, of Wolf, Greenfield & Sacks, Boston, MA, for plaintiff Molins PLC.

Carl Schnee, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, R. Stan Mortenson, Scott L. Nelson, and Lisa D. Burget, of Miller, Cassidy, Larroca & Lewin, William K. West, Jr., of Cushman, Darby & Cushman, Washington, DC, for plaintiff John C. Smith, Jr.

Robert W. Whetzel, of Richards, Layton & Finger, Wilmington, DE, Willem G. Schuurman, Eric B. Meyertons, and Richard D. Egan, of Arnold, White & Durkee, Austin, TX, Todd Dillman, of Giddings & Lewis, Fond Du Lac, WI, for defendants Textron, Kearney & Trecker and AVCO.

Robert Jacobs, of Jacobs & Crumplar, Wilmington, DE, Richard E. Dick, John S. Pacocha, and Howard E. Silverman, of Dick & Harris, Chicago, IL, for German Defendants and Their U.S. Affiliates.

## OPINION

FARNAN, District Judge.

## I. INTRODUCTION

On November 24, 1992, the Court issued a Memorandum Opinion concluding that U.S. Patent Nos. 4,369,563 and 4,621,410 are unenforceable due to inequitable conduct on the part of Plaintiffs Smith and Molins (through the actions of Dennis Whitson and Ivan Hirsh) before the United States Patent and Trademark Office (hereinafter the "U.S. PTO") during the prosecution of the '563 patent. In addition to its inequitable conduct finding, the Court also found that this is an "exceptional case" under 35 U.S.C. § 285. However, because the Court was at that time unable to conclude that it would be unjust not to award attorneys fees, the Court ordered additional briefing on the issue of whether the Court should exercise its discretion and award attorneys fees to the Defendants. Following the completion of briefing, the Court held oral argument. (D.I. 336). At oral argument the Court heard separately from counsel for the First Defendants (Defendants Textron Inc., Kearney & Trecker Corporation and Avco Corporation), counsel for the West German Defendants, counsel for Plaintiff Molins PLC, and counsel for Plaintiff Smith. Based on the findings contained in the Court's November 24, 1992 Memorandum Opinion and the additional findings made below, the Court will grant Defendants' application for reasonable attorneys fees and costs.

308

## II. DISCUSSION

### A. Legal Standard

 Attorneys fees may be awarded to the prevailing party in a patent case if the Court finds the case to be exceptional. 35 U.S.C. § 285. Once a court determines that a case is exceptional, the court may exercise its discretion to award reasonable attorneys fees to the prevailing party. *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 470 (Fed.Cir.1985). Since the Court has already determined that this is an exceptional case, the Court must now decide whether to exercise its discretion to award the Defendants attorneys fees. In this regard, the Court is cognizant that the Federal Circuit has cautioned that the purpose of § 285 is to provide for the award of attorneys fees "where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel fees which prevailing litigants normally bear." *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 (Fed.Cir.1987). In deciding that attorneys fees should be awarded to the Defendants in this case, the Court has considered the following factors: closeness of the case, tactics used by counsel, and the conduct of the parties. *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201 (Fed.Cir.1986).

### B. Closeness of Case

Defendants contend that a consideration of the "closeness of the case" factor weighs in favor of awarding Defendants attorneys fees. The Defendants argue that this was not a close case as evidenced by the Court's finding of ten distinct instances of inequitable conduct committed by three separate persons over a twenty year period.

Plaintiff Molins, on the other hand, argues that this was a close case, and for that reason the award of attorneys fees should be denied. Molins advances several arguments to support its contention that this was a close case.

First, Molins argues that the Williamson inventions "represented a significant and revolutionary advance in automated manufacturing systems" whereas "the process of the Wagenseil prior art has received no commercial acclaim or recognition." Plaintiff's Answering Brief, D.I. 319, at 7–8. Even assuming this to be true, the Court does not find this persuasive on the issue of whether Whitson, Smith and Hirsh's inequitable conduct before the U.S. PTO warrants an award of attorneys fees. The Court has already determined that the Wagenseil prior art was highly material and should have been disclosed to the U.S. PTO, and that Whitson, Smith and Hirsh intended to deceive the PTO in not citing it as prior art. The fact that the Williamson "invention" has subsequently received greater acclaim does not mean that the Wagenseil reference was not material. The System 24's success might properly be attributed to many factors notwithstanding Wagenseil.

The second ground advanced by Molins to support its contention that this was a close case is the Court's August 14, 1990 denial of Defendant's motions for summary judgment. The Court finds this similarly unpersuasive. In denying Defendants' motions for summary judgment, the Court held that issues of fact existed as to whether Whitson, Smith and Hirsh intended to mislead the U.S. PTO. This conclusion, however, does not necessarily indicate that the question of intent was "close." It merely indicates that on the record before it in August, 1990, and viewing the evidence most favorably for the Plaintiff, there was a genuine dispute as to whether Whitson, Smith and Hirsh possessed the requisite intent to mislead the U.S. PTO.

After hearing the full presentation of evidence and having the opportunity to observe the demeanor of the witnesses, the Court conclusively determined that Whitson, Smith and Hirsh each withheld material information from the U.S. PTO, and did so with the intent to mislead the PTO. The Court found the evidence from which an intent to deceive could be inferred was overwhelming, while the explanations offered by Smith and Hirsh lacked credibility.

In further support of its contention that this was a close case, Molins points to the fact that at least seven third parties entered into license agreements under the patents in suit, both before and after the trial on Defendants' inequitable conduct allegations. The Court agrees with the underlying assumption

that third party licensing agreements, negotiated with full knowledge of the facts, may be probative on the issue of whether this was a close case. *See J.P. Stevens Co.,* 822 F.2d at 6049. However, in this case there is no record evidence regarding the third parties' reasons for taking the licenses despite the lawsuit. Nor is there evidence that the licenses were negotiated with full knowledge of the facts. Although Cincinnati Milacron was undoubtedly aware of the allegations of inequitable misconduct, the Court cannot presume that Cincinnati Milacron took a license because it viewed this case as close.

Finally, Molins contends this was a close case because the U.S. PTO's treatment of Wagenseil confirmed Molins' reasonableness in contending that Wagenseil was not material. The '563 patent was subject to reexamination brought by Cross and Trecker. Molins cited Wagenseil along with all prior art that had been cited in foreign prosecutions on a form provided by the U.S. PTO. (K–18). Molins argues that because the examiner was obligated to consider each prior art reference and didn't reject any claims notwithstanding Wagenseil, Molins' understanding that Wagenseil was not material was reasonable.

The Court has already determined that the reexamination of the '563 patent had little bearing on the materiality of Wagenseil. This conclusion was based in part on the fact that Wagenseil was not specifically highlighted for the examiner to consider, and in part because Smith and Hirsh did not reveal to the examiner the significant facts regarding Whitson's prior concealment of Wagenseil, despite Whitson's belief that Wagenseil was highly material and the impact Wagenseil had in the prosecution of corresponding foreign patents. That Hirsh and Smith knew that Wagenseil should have been disclosed to the U.S. PTO is highlighted by their employment of an independent attorney to render an opinion on the enforceability of the '563 patent. (K–401; K–402). The Court concludes that Plaintiff Molins cannot rely on the results of the reexamination proceedings

to demonstrate the closeness of this case when the examiner was not given the benefit of full disclosure regarding Wagenseil.[1]

Notwithstanding Molins' contentions to the contrary, the magnitude and indiscriminate nature of the inequitable conduct alone in this case refutes any suggestions that this was a close case. Accordingly, the Court finds the closeness of the case weighs in favor of awarding attorneys fees to the defendants.

## C. *Conduct of the Parties*

Defendants further assert that Smith's and Hirsh's litigation conduct evidence bad faith requiring an award of attorneys fees and costs. The Court agrees.

### 1. *Hirsh's Destruction of Documents*

The Court has already determined that Hirsh acted in bad faith when he destroyed foreign prosecution files related to the prosecution of the System 24 invention which files were probably relevant to this litigation. Opinion, at 66. Once again, Plaintiff Molins dedicates much of its brief to rearguing issues previously decided by the Court. In defending Hirsh's actions in the context of the present application, Molins contends that Hirsh did not *intentionally* destroy *relevant* evidence and that Hirsh's destruction of the foreign prosecution files did not prejudice Defendants. Molins presents the same explanations that were presented to and found lacking in credibility by the Court at trial.

Although Molins argues that Hirsh preserved all of the relevant documents, the Court recognizes that what is relevant to one side of a case may not be relevant to the other. Hirsh's destruction of the subject documents precluded the Defendants from conducting full and fair discovery. It is the lost opportunity of Defendants to inspect Molins' foreign prosecution files for themselves that has prejudiced the Defendants.

---

**1.** The Court notes that Plaintiff Molins utilizes a substantial portion of its brief to reargue the question of Wagenseil's materiality to the System 24 invention. The Court has detailed its reasons for concluding that Wagenseil was highly material prior art to the System 24 invention in its November 24, 1992 Memorandum Opinion and sees no utility in repeating its analysis here.

### 2. *Plaintiff Smith*

Plaintiff Smith advances five arguments in opposing Defendants' request for attorneys fees and costs: (1) defendants have failed to meet their burden of showing that it would be grossly unjust not to award attorneys fees and costs; (2) the Court's finding that this is an exceptional case did not relate to Plaintiff Smith and thus does not justify an award of fees against Plaintiff Smith; (3) the inequitable conduct that the Court found to exist on the part of Plaintiff Smith does not warrant an award of attorneys fees; (4) the alleged inconsistencies regarding Plaintiff Smith's knowledge of the German oppositions does not justify an award because Mr. Smith prevailed on the ultimate issue, i.e. whether he knew of the Wagenseil reference during the prosecution of the patent; and (5) Defendants' remaining contentions regarding discovery abuses by Plaintiff Smith do not support an award for attorneys fees because they did not occur.

In the Court's November 24, 1992 Memorandum Opinion the Court found that Smith engaged in a pattern of inequitable conduct before the U.S. PTO. Specifically, the Court found that Smith acted inequitably in: (1) failing to disclose Lemelson application 107,-357; (2) failing to disclose during the reexamination of the '563 patent, the highly material Wagenseil prior art and its impact on Molins' prosecution of corresponding foreign patents;[2] and (3) failing to disclose Lemelson patents '014 and Reissue 26,770. The Court also found that Smith failed to disclose these references with the intent to deceive the U.S. PTO. It is this pattern of repeated instances of inequitable conduct on the part of Smith, Whitson, and Hirsh, together with Hirsh's destruction of documents that led the Court to conclude in the first instance that this is an exceptional case. *See Cosden Oil & Chemical Co. v. American Hoechst Corp.,* 543 F.Supp. 522 (D.Del.1982) (awarding attorneys fees based upon a course of conduct calculated to mislead).

Plaintiff Smith correctly notes that the Court did not address the multitudes of Defendants' allegations of litigation misconduct on the part of Plaintiff Smith in its November 24, 1992 opinion. However, Plaintiff Smith is not correct in his assumption that the Court did not address these allegations because they were unworthy of merit.

■ On the contrary, the conclusions reached by the Court in its opinion were intended solely to dispose of the liability issue, not as a full and complete disposition on the issue of attorneys fees. Without question, Hirsh's destruction of relevant documents was the sort of bad faith litigation misconduct that would warrant an attorneys fee award. However, Hirsh's destruction of documents is not the only factor present in this litigation that would support the Court's finding that this is an exceptional case. Indeed, Smith's blatant and repeated disregard for his duty of candor before the Patent and Trademark Office alone would make this an exceptional case. *See Fox Industries, Inc. v. Structural Preservation Systems, Inc.,* 922 F.2d 801 (Fed.Cir.1990).

Moreover, the Court makes the following additional findings regarding Smith's conduct which the Court finds persuasive on the issue of attorneys fees but which were not considered as relevant to the Court's conclusions regarding the enforceability of the patents. First, the Court finds that Smith acted in bad faith in not producing documents related to the Lemelson patent applications 107,357, 91,908, and 251,656 in response to Defendants' document request. On October 10, 1986, the Defendants requested the Plaintiffs to produce "[a]ll documents relating to or pertaining to [Lemelson U.S. Patent No. 3,854,889], including all documents relating to the prosecution of the applications on which the Patent is based or to which it is related...." Stipulated Fact 10.118. Initially, Smith did not identify the three Lemelson applications in his response to the document

---

**2.** Plaintiff Smith states in his brief that an award of attorneys fees in favor of the defendants is inappropriate, in part, because the Court did not find that he "withheld" Wagenseil from the U.S. PTO during the reexamination proceeding, but failed to disclose it in the appropriate manner. Plaintiff Smith misses the import of the Court's finding, which that was citing Wagenseil along with 80 other prior art references was tantamount to a failure to disclose.

request. Tr., at 464.[3] Subsequently, during a deposition, Smith testified that the documents related to the Lemelson machine tool applications had been destroyed. Smith Deposition, Vol. 11, at 32–33. Then, at a hearing before the Court on September 12, 1990, Smith acknowledged that he was in possession of the application files, but asserted Lemelson's attorney-client privilege to explain his non-production. G–108, at 18–19.

Given the importance of Lemelson application No. 107,357 to the enforceability of the Williamson patents, the Court can only assume that Smith's repeated failure to identify and then produce these documents was to obstruct Defendants' discovery efforts. Moreover, the Court finds Smith's present explanation regarding the Lemelson applications suspect. The Court does not find credible Smith's explanation that he did not remember the Lemelson application files. Smith prosecuted Lemelson patents for approximately ten years, ending in 1984. Opinion, at 47–55. Similarly, the Court is convinced Smith's explanation that the application files withheld were not responsive to the discovery request because they did not "relate back" in time is simply a post-hoc attempt to justify his actions. Certainly, a reasonable interpretation of "related" would include continuation and continuation-in-part applications.

Second, the Court's finding that Smith conducted this litigation in bad faith is supported by a record which is replete with inconsistencies in Mr. Smith's testimony. One example of this inconsistency is outlined above. Another example is detailed in the Court's November 24, 1992 Memorandum Opinion. In an attempt to show that Smith knew or cultivated ignorance of the existence of Wagenseil as material prior art, the Defendants attempted to prove that Smith knew of the German opposition where Wagenseil was cited as blocking prior art. Initially, Smith denied having any knowledge of the German opposition until after the '563 patent issued.[4]

Opinion, at 39. However, after being confronted at his deposition with a copy of an August 28, 1975 letter from Smith to Mr. Blodgett of Cincinnati Milacron, Smith acknowledged that he must have known about the German opposition. (C–23; Smith Deposition, Vol. 5, at 92; Tr., at 515–16). Then, at trial, Smith not only indicated that he knew about the German opposition, but he testified about a telephone conversation he had with Whitson regarding the prior art references and the German opposition. Opinion, at 38–39.

A third example of Smith's misstatements is his testimony relating to the issue of whether he had contemplated instituting litigation in 1984 regarding the Williamson patents. Initially, Smith testified that he could not recall that litigation was contemplated in 1984. Tr., at 521–22. At trial, however, confronted with an agreement between Molins and Smith that referenced contemplated litigation with AVCO, Smith changed his statement and admitted that in 1984 he was planning to sue AVCO. Tr. at 521–22.

Smith's inequitable conduct before the U.S. PTO, coupled with his attempts to obstruct full and complete discovery and the numerous inconsistencies in Smith's testimony not only make this an exceptional case, but are indicative of the type of bad faith that justifies an award of attorneys fees and costs. *See Mathis v. Hydro Air Industries, Inc.,* 1 U.S.P.Q.2d 1513, 1520–30, 1986 WL 84360 (C.D.Cal.1986), *aff'd,* 818 F.2d 874 (Fed.Cir.), *cert. denied,* 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987).

### D. *Tactics Used By Counsel*

Molins contends that misconduct on the part of Defendants' counsel is sufficient to preclude an award of attorneys fees and costs. Molins highlights three examples of misconduct by Defendants which allegedly caused prejudice to Plaintiffs. First, Molins asserts that Whitson, by virtue of his failing health, became confused during trial when

---

3. Smith testified that he didn't recall the files until after the 16th or 17th day of his deposition.

4. Smith also denied having received a June 12, 1975 letter from Whitson in which Whitson referred to opposition from six German companies

involving a "large number of literature references" until presented with the letter during his deposition. (C–122; Smith Deposition, Vol. 16, at 5).

Defendants' counsel examined him using a mislabelled chart that also contained an inaccurately translated claim. Second, Molins accuses Defendants' counsel of delaying the production of a substantial quantity of relevant documents including many articles about flexible manufacturing systems that originated at Kearney & Trecker. Third, Molins contends that Defendants have repeatedly misrepresented the Patent Law of the United States and thereby misled the Court. According to Molins, this misconduct on the part of the Defendants would warrant an award of attorneys fees and costs in favor of the Defendants unjust.

The Court finds that the litigation misconduct of Defendants' counsel cited by the Plaintiffs, even if true, should not preclude an award of attorneys fees in favor of Defendants. With regard to the mislabelled/mistranslated chart, the Court notes that the error was discovered during trial, and Plaintiffs had full opportunity to correct the error with Whitson.

With regard to Molins' allegations that Defendants' counsel misrepresented the law in its briefing, the Court finds that the misrepresentations were not frequent, nor significant. Moreover, the Court assumes that such misrepresentations were inadvertent, resulting from zealous advocacy and not an attempt to intentionally mislead the Court.

The Court similarly finds that Defendants' allegations against Plaintiffs' counsel with regard to inaccurate information contained in summary judgment briefs do not rise to the level of bad faith litigation that warrants an award of attorneys fees. As with Defendants' counsel alleged misstatements of the law, the Court assumes that the inaccuracies contained in the summary judgment brief were due to oversight and not an attempt to mislead the Court.

### E. Prejudgment and Post–Judgment Interest

■ For the same reasons the Court finds attorneys fees appropriate, as outlined by the Court here and in its November 24, 1992 Memorandum Opinion, the Court also finds prejudgment and post-judgment interest appropriate. Notwithstanding Plaintiff's contentions to the contrary, this case is the exceptional case among exceptional cases. See Mathis v. Spears, 857 F.2d 749, 754 (Fed.Cir.1988). Plaintiff Molins, through Whitson and Hirsh, and Plaintiff Smith withheld several potentially invalidating references from the U.S. PTO, and did so with the intent to deceive the U.S. PTO.

Moreover, both Molins, through the actions of Hirsh, and Smith were involved in various acts of litigation misconduct, including destruction of relevant files and obstruction of discovery. Finally, Plaintiff Smith's testimony throughout the litigation, most particularly at trial was, at best, "less than truthful." Id. at 761; see also Gardiner v. Gendel, 727 F.Supp. 799, 805 (E.D.N.Y.1989), aff'd, 976 F.2d 746 (Fed.Cir.1992). In light of the scope and significance of Plaintiffs' bad faith, the Court will exercise its discretion and award Defendants reasonable attorneys fees and costs, as well as prejudgment and post judgment interest.

### F. Amount of Award

■ The determination of the amount of the award is also within the discretion of the Court. Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1553 (Fed.Cir. 1989). However, the Court must take into account the nature and extent of the particular misconduct involved in determining the appropriate award. Id.

■ In this case, the Court finds that Defendants are entitled to be compensated for all of their attorneys fees and costs. While the totality of the circumstances surrounding the prosecution of the patents in suit and the litigation convinced the Court that an award of attorney's fees is appropriate, the Court's finding that this is an exceptional case is grounded principally in the Plaintiffs' inequitable conduct in their dealings with the U.S. PTO.

Under any one of a multitude of scenarios, had the U.S. PTO been provided with one or all of the prior art references which were intentionally withheld from it by the Plaintiffs, the possibility exists that the Williamson patent would not have issued. Thus, absent Plaintiffs' inequitable conduct, the

Plaintiffs would not have been in the position of asserting the patents against alleged infringers and the Defendants would not have been forced to defend this litigation. Therefore, the Court concludes that Defendants are entitled to recover all of their attorney fees and expenses. *See Scripps Clinic and Research Foundation v. Baxter Travenol*, 729 F.Supp. 1473, 1478 (D.Del.1990).

### III. *CONCLUSION*

For the reasons discussed here, and those contained in the Court's November 24, 1992 Memorandum Opinion, Defendants' application for an award of attorneys fees and costs, including prejudgment and post-judgment interest, will be granted.

An appropriate Order will be entered.